IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

---

No. 22-1185
Consolidated with Nos. 22-1197, 22-1605

---

In re: FLINT WATER CASES

---

LUKE WAID,

*Plaintiff*

INDIVIDUAL PLAINTIFFS;
SETTLEMENT CLASS PLAINTIFFS

*Plaintiffs-Appellees*

v.

RICHARD DALE SNYDER, *et al.*

*Defendant*

RAYMOND HALL; ROBERT HEMPEL; ASHLEY JANKOWIAK

*Objectors-Appellants*

---

On Appeal from the United States District Court
For the Eastern District of Michigan,
No. 5:16-cv-10444-JEL-MKM

---

**Principal Brief
of Appellants Hall and Jankowiak**

HAMILTON LINCOLN LAW INSTITUTE
CENTER FOR CLASS ACTION FAIRNESS

Adam E. Schulman
M. Frank Bednarz
1629 K Street NW, Suite 300
Washington, DC 20006
Telephone: (610) 457-0856
Email: adam.schulman@hlli.org

*Attorneys for Appellants Raymond Hall and
Ashley Jankowiak*

## Corporate Disclosures

Under 6th Cir. R. 26.1, Objector-Appellants Raymond Hall and Ashley Jankowiak make the following disclosures:

1.  No appellant is a subsidiary or affiliate of a publicly owned corporation.

2.  There is no publicly owned corporation, not a party to the appeal, that has a significant financial interest in the outcome.

# Table of Contents

Corporate Disclosures ................................................................ i

Table of Contents ..................................................................... ii

Table of Authorities ................................................................. iv

Statement in Support of Oral Argument ........................................ x

Jurisdictional Statement ............................................................ 1

Statement of the Issues ............................................................. 2

Rule Fed. R. App. Proc. 28(i) Statement ...................................... 3

Statement of the Case .............................................................. 3

    A.    The underlying litigation. ................................................. 3

    B.    Settlement Agreement. .................................................. 5

    C.    Fee application. ........................................................... 6

    D.    The Hall objection and motion for discovery. ..................... 7

    E.    *Ex parte* conferences held without objector or public knowledge. .......... 9

    F.    The fairness hearing. ................................................... 11

    G.    Final approval. ........................................................... 15

    H.    Order granting fees and denying discovery. ........................ 15

Summary of the Argument ........................................................ 18

Argument ............................................................................. 19

    I.    The district court violated Rule 23(h) by refusing to allow objectors or class members to review the details of lead counsel's billing and costs records, which would have shown excessive attorneys' fees. ............................. 19

        1.    Class members must have access to examine and challenge fees and costs they may be ordered to pay. ................................ 20

        2.    The concealment of detailed billing and costs prejudiced objectors.. 29

    II.    By charging certain claimants Special Assessments, the fee order violates a foundational principle of the common fund doctrine: fees must be spread uniformly. ............................. 35

Conclusion ........................................................................... 46

Certificate of Compliance with Fed. R. App. Proc. 32(a)(7)(C) ..................... 48

Proof of Service ................................................................................................................. 49

Addendum of Designations of Relevant District Court Documents ........................... 50

# Table of Authorities

<u>Cases</u>

*Aguinaga v. United Food & Commercial Workers Int'l Union.*,
 993 F.2d 1480 (10th Cir. 1993) ................................................................. 39

*Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores*,
 54 F.3d 69 (2d Cir. 1995) ......................................................................... 36

*In re Anthem Inc. Data Breach Litig.*,
 2018 WL 3960068, 2018 U.S. Dist. LEXIS 140137 (N.D. Cal. Aug. 17,
 2018) .............................................................................. 22, 26, 30, 34

*Ark. Teachers Ret. Sys. v. State St. Bank & Trust Co.*,
 512 F. Supp. 3d 196 (D. Mass. 2020) ....................................................... 32

*Ark. Teachers Ret. Sys. v. State Street Corp.*,
 25 F.4th 55 (1st Cir. 2022) ....................................................................... 29

*Barney v. Saunders*,
 57 U.S. 535 (1854) .................................................................................... 32

*Binta B. v. Gordon.*,
 710 F.3d 608 (6th Cir. 2013) .................................................................... 33

*Blum v. Stenson*,
 465 U.S. 886 (1984) .................................................................................. 31

*Boeing v. Van Gemert*,
 444 U.S. 472 (1980) .................................................................................. 36

*Bowling v. Pfizer*,
 102 F.3d 777 (6th Cir. 1996) .................................................................... 25

*Budinich v. Becton Dickinson & Co.*.,
 486 U.S. 196 (1988) .................................................................................... 2

*Cassese v. Williams*,
 503 Fed. App'x 55 (2d Cir. 2012) ............................................................. 22

*Chambers v. Whirlpool*,
 980 F.3d 645 (9th Cir. 2020) .................................................................... 22

*City of Westland Police & Fire Ret. Sys. v. Metlife, Inc.*,
  2021 WL 2453972, 2021 U.S. Dist. LEXIS 112107 (S.D.N.Y. Jun. 15,
  2021) ................................................................................................................. 30

*Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ............................................................................. 24

*Devlin v. Scardelletti*,
  536 U.S. 1 (2002) ................................................................................................ 1

*In re Diet Drugs Prod. Liab. Litig.*,
  582 F.3d 524 (3d Cir. 2009) .......................................................................... 39-40

*In re Dry Max Pampers Litig.*,
  724 F.3d 713 (6th Cir. 2013) ............................................................................... x

*Farrell v. Bank of Am. Corp., N.A.*,
  827 Fed. App'x 628 (9th Cir. 2020) ................................................................. 25

*Fessler v. Porcelana Corona De Mexico*,
  23 F.4th 408 (5th Cir. 2022) ............................................................................. 24

*Garner v. Cuyahoga County Juvenile Court*,
  554 F.3d 624 (6th Cir. 2009) ............................................................................ 35

*Geier v. Sundquist*,
  372 F.3d 784 (6th Cir. 2004) ............................................................................ 36

*Grupo Mexicano de Desarollo S.A. v. Alliance Bond Fund, Inc.*,
  527 U.S. 308 (1999) .......................................................................................... 46

*In re Hall*,
  4 F.4th 376 (6th Cir. 2021) .............................................................................. 10

*Halley v. Honeywell Int'l, Inc.*,
  861 F.3d 481 (3d Cir. 2017) .......................................................................... 32-33

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) .......................................................................................... 33

*Holbrook v. Pitt*,
  748 F.2d 1168 (7th Cir. 1984) .......................................................................... 46

*In re Home Depot Inc. Customer Data Sec. Breach Litig.*,
 931 F.3d 1065 (11th Cir. 2019) ................................................................. 25

*Johnson v. NPAS Sols., LLC,*
 975 F.3d 1244 (11th Cir. 2020) ........................................ 2, 20, 21, 25, 28

*In re Johnson & Johnson Derivative Litig.*,
 2013 U.S. Dist. LEXIS 167066, 2013 WL 6163858 (D.N.J. Nov. 25,
 2013) ............................................................................................................ 34

*Jordan v. Mark IV Hair Styles, Inc.*,
 806 F.2d 695 (6th Cir. 1986) .................................................... 24, 35, 40

*JPMorgan Chase Bank, N.A. v. Winget*,
 920 F.3d 1103 (6th Cir. 2019) ..................................................................... 2

*Kalamazoo v. River Study Group v. Rockwell Intern. Corp.*,
 355 F.3d 574 (6th Cir. 2004) ..................................................................... 20

*Kaplan v. Rand*,
 192 F.3d 60 (2d Cir. 1999) ........................................................................ 34

*Keil v. Lopez*,
 862 F.3d 685 (8th Cir. 2017) ......................................................... 2, 21, 25

*Laffitte v. Robert Half Int'l*,
 376 P.3d 672 (Cal. 2016) .......................................................................... 35

*Lawler v. Johnson*,
 253 So. 3d 939 (Ala. 2017) ....................................................................... 26

*Lindy Bros. Builders v. Am. Radiator & Standard Sanitary Corp.*,
 540 F.2d 102 (3d Cir. 1976)*(en banc)*.................................... 3, 33, 37-40, 41, 43, 46

*Linneman v. Vita-Mix Corp.*,
 394 F. Supp. 3d 771 (S.D. Ohio. 2019) .............................................. 17, 22

*Linneman v. Vita-Mix Corp.*,
 970 F.3d 621 (6th Cir. 2020) ............................................................ 28-29, 35

*Louzon v. Ford Motor Co.*,
 718 F.3d 556 (6th Cir. 2013) ................................................................. 19-20

*In re Mercury Interactive Corp. Secs. Litig.*,
  618 F.3d 988 (9th Cir. 2010) ..........................................................2, 20-23, 25, 35, 40

*Mills v. Electric Auto-Lite Co.*,
  396 U.S. 375 (1970) .......................................................................................... 36

*Moulton v. U.S. Steel Corp.*,
  581 F.3d 344 (6th Cir. 2009) .......................................................................25, 35

*In re Nat'l Prescription Opiates Litig.*,
  956 F.3d 838 (6th Cir. 2020) ............................................................................ 46

*In re Nat'l Prescription Opiates Litig.*,
  976 F.3d 664 (6th Cir. 2020) ............................................................................ 46

*Oldham v. O.K. Farms, Inc.*,
  871 F.3d 1147 (10th Cir. 2017) ........................................................................ 29

*Petrovic v. AMOCO Oil Co.*,
  200 F.3d 1140 (8th Cir. 1999) .......................................................................... 25

*In re Polyurethane Foam Antitrust Litig.*,
  168 F. Supp. 3d 985 (N.D. Ohio 2016) ............................................................ 30

*Rawlings v. Prudential-Bache Properties*,
  9 F.3d 513 (6th Cir. 1993) ................................................................................ 23

*Redman v. RadioShack Corp.*,
  768 F.3d 622 (7th Cir. 2014) ............................................................ 2, 20-21, 25

*Rembert v. A Plus Home Health Care Agency LLC*,
  986 F.3d 613 (6th Cir. 2021) ............................................................................ 35

*Reynolds v. Beneficial Nat'l Bank*,
  288 F.3d 277 (7th Cir. 2002) .........................................................................23-24

*Rodriguez v. Disner*,
  688 F.3d 645 (9th Cir. 2012) ............................................................................ 32

*In re Roundup Prods. Liab. Litig.*,
  544 F. Supp. 3d 950 (N.D. Cal. 2021) .............................................................. 46

*Shane Grp., Inc. v. Blue Cross Blue Shield,*
　　825 F.3d 299 (6th Cir. 2016) ............................................................2, 27-28, 31, 43

*Shimman v. Int'l Union of Operating Eng'rs Local 18,*
　　744 F.2d 1226 (6th Cir. 1984) (*en banc*) ....................................2, 36, 39, 41

*In re Stericycle Secs. Litig.,*
　　35 F.4th 555 (7th Cir. 2022) ................................................................................x

*United States ex rel. Taxpayers Against Fraud v. GE,*
　　41 F.3d 1032 (6th Cir. 1994) ............................................................ 32

*Ursic v. Bethlehem Mines,*
　　719 F.2d 670 (3d Cir. 1983) ............................................................ 31

*In re World Trade Ctr. Disaster Site Litig,*
　　754 F.3d 114 (2d Cir. 2014) ............................................................ 32

*Yamada v. Nobel Biocare Holding AG,*
　　825 F.3d 536 (9th Cir. 2016) ............................................................ 21

<u>Rules and Statutes</u>

28 U.S.C. § 1291 ............................................................................................ 2

28 U.S.C. § 1331 ............................................................................................ 1

28 U.S.C. § 1343 ............................................................................................ 1

28 U.S.C. § 2201 ............................................................................................ 1

E.D. Mich. L.R. 54.1.2 ............................................................................... 21

Fed. R. App. Proc. 4(a)(1)(A) ................................................................... 2

Fed. R. App. Proc. 28(i) ............................................................................. 3

Fed. R. Civ. Proc. 23(h) ....................................................................*passim*

Fed. R. Civ. Proc. 23(h)(1) ....................................................................... 27

Fed. R. Civ. Proc. 54(b) ............................................................................. 1

<u>Other Authorities</u>

Advisory Committee Notes on 2003 Amendments to Rule 23(h) ................................ 20

Burch, Elizabeth Chamblee,
    *Publicly Funded Objectors*,
    19 THEORETICAL INQUIRIES IN LAW 47 (2018) ........................................................x

Choi, Stephen J., Jessica Erickson, & Adam C. Pritchard,
    *Working Hard or Making Work? Plaintiffs' Attorneys Fees in Securities Fraud*
    *Class Actions*,
    17 J. EMPIRICAL LEGAL STUD. 438 (2020) ............................................................ 31

Egan, Paul,
    *Lawyer disputes judge's account of off-the-record sessions in Flint civil case*,
    DETROIT FREE PRESS (Jul. 1, 2021) ...................................................................... 11

RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT (2011) ........ 36-37

Rubenstein, William B.,
    5 NEWBERG ON CLASS ACTIONS § 5:13
    (5th ed. 2020) ................................................................................................. 22

State Bar of Michigan,
    Formal Opinion RI-364 (Sept. 25, 2013) ............................................................ 31

*The Tom Green Show: Undercutters Pizza* (MTV television broadcast 1999,
    *available at* https://www.youtube.com/watch?v=PdfztAY3qoU (last
    visited Nov. 15, 2022) ...................................................................................... 44

### Statement in Support of Oral Argument

Pursuant to 6th Cir. R. 34, appellants respectfully request that the Court hear oral argument in this case because it presents significant issues concerning attorneys' fees in class action settlements and complex litigation. The case is of particular interest to Flint residents who must share a $625 million settlement fund as partial compensation for monstrous injuries caused by the settling defendants. Exploration at oral argument would aid this Court's decisional process and benefit the judicial system.

Appellants are working with the pro bono assistance of the non-profit Hamilton Lincoln Law Institute's Center for Class Action Fairness. Courts and commentators have repeatedly recognized the Center's expertise in raising these class action governance issues. *See, e.g.*, *In re Stericycle Secs. Litig.*, 35 F.4th 555, 572 (7th Cir. 2022); *In re Dry Max Pampers Litig.*, 724 F.3d 713, 717 (6th Cir. 2013); Elizabeth Chamblee Burch, *Publicly Funded Objectors*, 19 THEORETICAL INQUIRIES IN LAW 47, 57 & n.37 (2018). Neither appellants nor the Center have settled an appeal for a *quid pro quo* payment to themselves; they bring this appeal in good faith.

A favorable resolution in this appeal would provide guidance to district courts in evaluating Rule 23(h) requests, and reduce the windfalls achieved by class counsel at the expense of absent class members and claimants ordered to pay putative common benefit awards to non-class attorneys.

## Jurisdictional Statement

The district court had jurisdiction under at least 28 U.S.C. § 1331 because the underlying claims arise under, for example, 28 U.S.C. § 1343(a) and 28 U.S.C. § 2201. *See* Complaint, RE 620-3, PageID # 17808.

Flint residents Raymond Hall and Ashley Jankowiak (collectively "Hall Objectors" or just "Hall") resided in Flint, Michigan as adults were exposed to tainted water, which they drank, between 2014 and 2016. Declarations, RE 1548-3; 1548-5. They are class members to the underlying settlement, which resolved claims against several defendants arising from the Flint Water Crisis. Hall filed a timely Rule 23(h) objection (Objection, RE 1548) to the Motion for an Award of Attorneys' Fees and Reimbursement of Expenses (Fee Motion, RE 1458). They also moved for discovery to advance their objection. Discovery Motion, RE 1586. The Hall Objectors subsequently filed claims from the settlement fund, and appeared at the fairness hearing through counsel. Transcript, RE 1906. As such, the Hall Objectors are "parties" entitled to appeal adverse rulings without the need to intervene and have standing to appeal the fee award and related orders. *Devlin v. Scardelletti*, 536 U.S. 1 (2002).

The district court issued an order that denied Hall's motion and granted in part the Fee Motion on February 4, 2022. Fee Order, RE 2105. (The district court previously granted final approval for the underlying settlement on November 10, 2021, Final Approval, RE 2008, and, making the necessary Rule 54(b) findings, entered a final judgment for the approval on March 3, 2022. Judgment, RE 2128. This appeal does not challenge the settlement approval, nor ongoing litigation against other defendants.)

Hall filed a timely notice of appeal under Fed. R. App. Proc. 4(a)(1)(A) on March 7, 2022. Notice, RE 2130. The United States Court of Appeals for the Sixth Circuit has jurisdiction under 28 U.S.C. § 1291, which provides jurisdiction over appeals from all final decisions of district courts. The post-approval fee decision is an independently appealable collateral order. *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196 (1988); *JPMorgan Chase Bank, N.A. v. Winget*, 920 F.3d 1103, 1105-06 (6th Cir. 2019).

## Statement of the Issues

1.     Interpreting Fed. R. Civ. Proc. 23(h), numerous circuit courts hold that absent class members have the right to examine the "details of class counsel's hours and expenses." *Redman v. RadioShack Corp.*, 768 F.3d 622, 638 (7th Cir. 2014); *see also Johnson v. NPAS Sols., LLC*, 975 F.3d 1244, 1252-55 (11th Cir. 2020); *Keil v. Lopez*, 862 F.3d 685, 705 (8th Cir. 2017); *In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988, 993-95 (9th Cir. 2010). More generally, this Court holds that principles of judicial openness and transparency must be observed "with particular strictness" in class action proceedings. *Shane Grp., Inc. v. Blue Cross Blue Shield*, 825 F.3d 299, 305 (6th Cir. 2016) (internal quotation omitted). Did the district court commit error by declining to follow these cases and to allow the objectors to review lead counsel's detailed billing and costs records?

2.     Under the common fund fee doctrine, courts may award attorneys' fees as a percentage of a settlement fund if and only if that award "will operate to spread the costs *proportionately*" among the beneficiaries of the fund. *Shimman v. Int'l Union of Operating Eng'rs, Local 18*, 744 F.2d 1226, 1229 (6th Cir. 1984) (*en banc*) (emphasis in

original). It is legal error to ask claimants without individual legal representation to pay a greater share of common fund fees to defray the costs of those claimants who retained individual counsel. *Lindy Bros. Builders v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 119-121 (3d Cir. 1976) (*en banc*). Did the district court violate the common fund doctrine by exacting Special Assessments of 25% or 17% solely against claimants who had not retained individual counsel by a certain date?

### Rule Fed. R. App. Proc. 28(i) Statement

Under Rule 28(i), Hall joins the brief filed by Chapman Appellants in consolidated case No. 22-1197, and adopts by reference their statement of the case.

### Statement of the Case

**A.    The underlying litigation.**

In 2014, state officials, including an unelected Emergency Manager, acting for Flint switched its water supply from Detroit Water and Sewerage to the Flint River to save money. Complaint, RE 620-3, PageID ## 17844-45. But the Flint River contained caustic water without adequate corrosion control. *Id.* at 17858. Lead from pipes consequentially leached into Flint tap water. *Id.* Ingested lead is dangerous, and exposure often causes lifelong developmental problems for children. *Id.* at 17907-11.

Flint water users, businesses, and others harmed by the crisis filed numerous individual and putative class actions. Class cases were consolidated in the docket below under co-lead class counsel Theodore Leopold of Cohen Milstein Sellers & Toll PLLC and Michael Pitt of Pitt McGehee Palmer & Rivers PC ("Class Counsel"). Appointment Order, RE 173. Individual actions were consolidated before the same court. The district

court entrusted settlement-negotiating authority for individual plaintiffs to Corey Stern of Levy Konigsberg LLP and Hunter Shkolnik of Napoli Shkolnik PLLC ("Liaison Counsel"), ordering them to "act fairly, efficiently and economically in the interests of all parties and party counsel." Order, RE 234, PageID # 8725-26.

Shortly after their appointment, in March 2018, Class and Liaison Counsel firms moved to disqualify each other, alleging that one another were working contrary to common interests. Among other things, Class Counsel alleged that Liaison Counsel was signing up masses of clients at "free dinner" events, which would provide no benefit to claimants who may later be entitled to a uniform payment. Motion for Replacement, RE 404, PageID # 13291. "The only advantage is to the attorney who will garner a percentage of the award based on the retainer agreement." *Id.* at 13292. Co-Liaison counsel cross-moved to disqualify Class Counsel, alleging that it "had entered secret side-fee deals; [and…] had agreements to assign work exclusively to those firms they had fee deals with." Shkolnik Declaration, RE 444-2, PageID # 14145. Co-Liaison Counsel also claimed that Class Counsel had inappropriately categorized time as "common benefit" when it was actually a client solicitation project. Cross-Motion, RE 444, PageID # 14114. The district court denied both motions although it agreed "important and serious allegations have been leveled." Transcript, RE 512, PageID # 15892.

On June 19, 2018, the district court entered a Case Management Order ("CMO") requiring the submission of time to the Special Master. CMO, RE 507. The CMO excluded from compensation "time spent on developing or processing" individual

client cases that does not serve a common benefit. *Id.* at 15829. Excepting a grace period or good cause shown, the order requires that "time or expense records submitted more than three (3) months in arrears may not be considered or included in any compilation of time or expense calculation and shall be disallowed." *Id.*

## B.    Settlement Agreement.

On August 20, 2020, Michigan announced that it had reached a $600 million settlement resolving state defendants' claims. The parties agreed to a 45-day process "to finalize the agreement and to encourage other defendants to join…." Transcript, RE 1268, PageID # 39531.

Ultimately, the Class and Liaison Counsel reached a $643.25 million settlement, including contributions from three additional sets of defendants: Flint defendants, McLaren Hospital defendants, and Rowe Professional Services Company. Settlement, RE 1394-2. Litigation continues against other defendants.

The Settlement blends class and mass action elements. It waives the claims of adult class members who did not register by a March 29, 2021 deadline. *Id.* at 54141.

The settlement also provides benefits for individuals outside the class definition, including all Flint residents first exposed to the water as children. Minor children—to whom 79.5% of settlement benefits are directed—may continue to claim from a holdback fund until it is exhausted, and do not waive their rights until they register. *Id.* at 54149; Exhibit, RE 1319-2, PageID ## 40788-831. Individually-represented plaintiffs are not class members, but may file a claim and will be bound if they register.

The Settlement pays more to claimants who can prove exposure to lead from 2014-2016, but most Flint residents do not have contemporaneous blood lead documentation. Chapman Objection, RE 1341, PageID # 41818. The settlement permits claimants to enhance their recovery through XRF bone lead testing, a test that purports to approximate historical lead exposure. Co-liaison Counsel Napoli justified the bone testing process on the grounds that there is "no reasonable alternative means of obtaining the lead measurement data." Letter Exhibit, RE 1825-2, PageID # 65147. As set forth in the Chapman Appellants' Statement of Case, Liaison Counsel prioritized bone testing for their clients, and frustrated efforts by other attorneys to make the tests more widely available prior to the April 27, 2021 XRF testing deadline. These results entitle minor children with XRF bone test results receive 233%-1233% more (up to tens of thousands of dollars more) than children without test results. *See* Exhibit, RE 1319-2, PageID ## 40790-801. Among tens of thousands of class members and unrepresented children, only 75 managed to secure bone tests during the Sunday time slots they were made available in early 2021. Presentation, RE 1897-1, PageID ## 66349-50.

## C.    Fee application.

Plaintiffs' Fee Motion (RE 1458) sought up to $202.76 million, 31.6% of the common benefit fund. *Id.* at 57192.

Plaintiffs' Fee Motion wedded three distinct components of the fee request, which they characterized as an award up to 31.6% of the gross settlement (*Id.* at 57192):

1. A Common Benefit Assessment ("CBA") on the whole fund at 6.33% for common benefit work performed at the directed of Class or Liaison Counsel for common benefit. *Id.* at 57159.

2. A cap on contingency fees to individually-retained counsel ("IRC"): 27% for counsel retrained prior to July 16, 2020, and 10% if after this date. *Id.* at 57160.

3. For unrepresented claimants, an additional 27% assessment ("Special Assessment") paid to Class and Liaison Counsel, and for claimants represented after July 16, 2020 an extra 17% assessment. *Id.*

The Fee Motion provided no hourly billing for claimed common benefit work, and for Co-Liaison Counsel Levy Konigsberg, it provided no billing information at all except for an assertion that it had expended "more than 30,000 hours of common benefit work." *Id.* at 57192. Levy Konigsberg also promised it would "provide its lodestar separately." *Id.* at 57190. The Fee Motion did not estimate how large the common benefit award would be. That total remains indeterminate because common benefit fees are assessed from individual claims based on whether and when the claimant retained an attorney.

**D.    The Hall objection and motion for discovery.**

Hall objected to the fee request (Objection, RE 1548), and on April 9, 2021 moved for discovery from the settling parties. Discovery Motion, RE 1586. Hall Objectors also joined an overlapping discovery request by the Chapman objectors,

focused on XRF bone scanning work and expenses by Liaison Counsel. Motion, RE 1736, PageID # 62817 n.5.

Hall objected that the Special Assessment fee structure violated fundamental principles of equitable fee awards because fees are not taxed proportionally to beneficiaries. Objection, RE 1548, PageID # 60228. In fact, the assessments perversely target claimants who receive less service and who navigate the claims process on their own. *Id.* at 60226-27.

Hall maintained that Rule 23(h) required more detail to evaluate the fairness of the fee award. Hall pointed out Class and Liaison Counsel had accused each other of performing work for the individual benefit of their firms, like retaining clients, and asserted class members should be allowed to verify the merits of these claims. Objection, RE 1548, Page ID # 60240. Hall explained that the Napoli firm falsely characterized dozens of temporary contract attorneys as "associates" and billed them at $500/hour even thought their market rate was likely only about one tenth that amount. Declaration, RE 1548-7, PageID # 60284-85; Discovery Motion, RE 1586, PageID # 61007.

Hall also objected that time spent on XRF bone testing may have been inappropriately categorized as common benefit work given that Liaison Counsel only opened up testing to non-clients in late February, after testing thousands of its own clients who will already compensate Liaison Counsel for that work individually. Motion, RE 1736, PageID # 62815. Under the proposal, Liaison Counsel profits directly from its clients have such test results, securing up to 27% of the enhanced gross awards for

itself. *Id.* at 62816. These awards subsequently dilute the shares paid to other class members who did not seek bone scanning—including class members who might not have been able to safely schedule an appointment at the height of Michigan's second wave of COVID-19.

## E. *Ex parte* conferences held without objector or public knowledge.

The district court held a series of closed *ex parte* conferences concerning XRF bone testing. The extent of the conferences were only revealed by chance when Liaison Counsel filed the wrong document as an exhibit in response to objections. Declaration, RE 1802-2, PageID ## 64674-76 (background on filing).

On May 10, 2021, following a docket entry concerning a non-noticed conference that had occurred in the case, Hall Objectors filed their motion to invite objectors to non-public hearings and record such proceedings. Motion, RE 1736.

Liaison Counsel filed a response laden with spurious attacks on Hall's counsel, and arguing that conferences are not "*ex parte*" when Class Counsel attends. Opposition, RE 1799. But Liaison Counsel accidentally filed a more illuminating response, when, responding to another objector's motion, they mistakenly filed a letter from co-lead Class Counsel Michael Pitt dated May 5, 2021. As described in the Chapman Appellants' Statement of Facts, the letter itself and subsequent litigation showed that the district court required co-lead Class Counsel Michael Pitt to withdraw a motion pertaining to XRF testing or be removed from his co-lead counsel role. Pitt Declaration, RE 1864-1, PageID # 66124. The district court also directed Pitt to draft a letter addressed solely to the court, which was first publicly filed by Liaison Counsel in response to objections.

*Id.* at 66125. Pitt also drafted a similar *rewritten* letter that omits allusions to off-the-record conferences and his concerns about the availability of XRF bone testing. *Id.* at 66125. When Hall Objectors' counsel speculated at a May 26 status conference that the circumstances of two similar letters "suggest additional *ex parte* communications," the district court responded categorically: "No, they don't." Transcript, RE 1800, PageID # 64651.

The court denied the objectors' motion "with prejudice" on grounds that conferences are not *ex parte* when Class Counsel attends, while also shedding more light on the disputed conferences. Order, RE 1830. The court admitted the attendance of "Settlement Counsel," including both Class, Liaison, and settling defendants' Counsel—but not any opponents to the Settlement or fee request. *Id.* at 65299-300.

Following the denial of this motion, objectors petitioned this Court for a writ of *mandamus* to require his access to future hearings, identify other substantive hearings, and recount the prior proceedings. While this Court found that "Petitioners raise serious allegations," no "clear and indisputable right" to relief existed because objectors are not "clearly and indisputable 'parties'" in this context. *In re Hall*, 4 F.4th 376, 378, 379 (6th Cir. 2021). The panel concluded that "Our denial of the petition for a writ of mandamus should not be mistaken for anything other than what it is: a ruling that the 'extraordinary remedy' of mandamus is not the proper route by which to air the serious concerns." *Id.* at 380.

Separately, Pitt filed a motion to reconsider denial of Hall's motion regarding *ex parte* proceedings contesting the court's characterizations of what transpired. Motion,

RE 1864, PageID # 66116. In an attached declaration, Pitt described a previously-undocumented hearing on May 10. Prior to this filing, there was "no mention of the May 10 meeting on the court docket." Paul Egan, *Lawyer disputes judge's account of off-the-record sessions in Flint civil case*, DETROIT FREE PRESS (Jul. 1, 2021).[1] According to Pitt, during the undocumented May 10 conference, the district court "ordered twice" for Pitt to revise his May 5 letter, finding it "insufficient." *Id.* at 66125. Pitt also disclosed the existence of a third non-public *ex parte* letter "sent to the Court" on March 19 which outlines "four concerns" about the monopolization of bone scans by Liaison Counsel; access, safety, equity and inclusion, and requested a hearing to discuss them. Pitt Declaration, RE 1864-1, PageID # 66130. This *ex parte* letter remains unfiled.

On August 26, 2021, the district court granted Pitt's motion in part, correcting the record as to three instances where the court had characterized Pitt alone as having acted when in fact other Class Counsel attorneys acted, but otherwise denied the motion. Order, RE 1951.

## F.    The fairness hearing.

The fairness hearing spanned three days, but Hall's fee objection was only heard on the third day.

Liaison Counsel spent much of the first day raising new arguments. Hall's counsel complained that the late-submitted material included 3,000 pages of "extracurricular exhibits," including irrelevant material impugning Hall and other

---

[1] *Available at* https://www.freep.com/story/news/local/michigan/flint-water-crisis/2021/07/01/dispute-heats-up-over-off-record-meetings-flint-water-lawsuit/7820563002/.

objectors' counsel, but failed to describe terms of Liaison Counsel's side-settlement with a previously-objecting law firm. Transcript, RE 1904, PageID # 66572-73. The district court cautioned that the term "extracurricular" might not conform with "very strict civility principles that are required here." *Id.*

Liaison Counsel noted that 51% of the 50,614 unique settlement registrations received at that time were filed by unrepresented individuals. Presentation, RE 1897-1, PageID # 66331. Liaison Counsel argued that Flint residents had adequate access to bone testing, citing 197 bone tests performed on Sundays between February 21, 2021 and April 25, 2021, the only time slots made available to non-clients. *Id.* at 66349-50. Only 75 unrepresented claimants among over 25,000 registerees obtained XRF bone tests. Liaison Counsel pointed to an allegedly large number of cancellations of appointments during this time period. *Id.* It did not note that these dates coincided with the Covid second wave and state restrictions on in-person gatherings, such that Chief Judge Hood reaffirmed on March 26, 2021 that criminal pleas and sentencing "cannot be conducted in person without seriously jeopardizing public health and safety." Exhibit, RE 2023-2, PageID # 70490. Liaison Counsel did not disclose how many of its own clients participated in bone testing, but third-party discovery revealed they tested 3,000 by September 2020 and hoped to test "9000+ people total." Exhibit, RE 2247, PageID # 73898. Liaison counsel also provided a slide titled "Law Firms

Participating in Bone Scans," which showed that 3,924 such tests had been performed, supposedly for clients of other law firms. Presentation, RE 1897-1, PageID # 66354.[2]

The second day of the fairness hearing was reserved for unrepresented objectors.

The third day of the fairness hearing began with a report from the Special Master about the review of billing from Class and Liaison Counsel. The court advised "I asked Ms. Greenspan to provide that data to me as we call it in camera, in chambers, or for my review so that I could look at what the data looks like." Transcript, RE 1906, PageID # 66883. The Special Master advised that the total hours submitted to her periodically were similar to the number of hours claimed by each firm in the fee application, and that firms had been contacted to resolve the "minor" discrepancies in hours. *Id.* at 66893. The Master also indicated that firms had been contacted regarding billers who were not previously submitted. *Id.* Hall's counsel observed that the relevant order says that time submitted more than three months late would be disallowed. *Id.* at 66896. The Special Master reported that the belatedly-provided hours "did not add up to a significant amount," and offered to chronicle this time. *Id.* at 66897.

Hall's counsel explained that the Special Assessments were not taxed proportionally from class recovery and furthermore would not result in parity in net recovery because of variations in how claimants would be charged for costs and under

---

[2] On the third day of the fairness hearing, an attorney from one of the "Participating" firms—Fieger, Fieger, Kenney & Harrington PC—explained that the claimants listed in that slide were individuals simply *referred* by the Feiger firm, which "was not involved at all in subjecting these clients to the bone scanning, deciding whether bone scanning should be done. That was all done by the Napoli firm." Transcript, RE 1906, PageID # 67099.

private fee agreements. Transcript, RE 1906, PageID ## 66950-54. The district court disagreed, remarking that "The 27 percent assessment does not hinge on whether you have a lawyer or not. It's assessed on all recoveries under the proposal." *Id.* at 66954. The court asked Liaison Counsel to confirm its understanding of the fee request, but Liaison Counsel confirmed Hall's understanding: an individual contingency fee is a "private agreement on some level between a lawyer and his client. That's not something that is contained in the settlement agreement. The settlement agreement can only control what it can control. And it's trying to not reward people for firing their lawyers, for not having lawyers." *Id.* at 66956.  Hall's counsel elaborated that, for example, its clients would have slightly larger net awards because they were represented *pro bono*, thus negating any imagined parity. *Id.* at 66959. The district court asked Hall's counsel to move on to a different subject out of concern that the argument was based on "misinformation." *Id.*

Liaison Counsel responded to Objector's presentation by asserting that "the Hamilton Lincoln project (sic) is … funded by companies such as ExxonMobil, by Masergy Energy, by David Koch, by Marathon Petroleum, by Devon Energy, by Phillips 66, by Anti-E-Cigarette companies, alcohol company, tobacco company. That's who funds Mr. Bednarz." *Id.* at 66997. Hall's counsel interjected that this was neither relevant nor true, but the district court responded "There were a number of references to being pro bono counsel, that you're not being paid in this particular case. So if indeed you're being paid by the Competitive Enterprise Institute, that could be relevant, I suppose." *Id.* Later, Liaison Counsel cited Wikipedia and a LinkedIn profile further

alleging an ongoing connection to the Competitive Enterprise Institute. *Id.* at 67044. Liaison Counsel concluded "we should call this what it is and what he's doing and people should understand who the Hamilton Lincoln Institute (sic) is." *Id.* at 67044. The district court did not mention its "very strict civility principles."

## G.    Final approval.

After resolving an ancillary dispute and renegotiation of one settling defendant's settlement contribution (Motion, RE 1980; Order, RE 1993), on November 10, 2021, the district court issued an order granting final approval to the settlement in the amended amount of $626.25 million. The court deferred consideration of attorneys' fees to a later order. Final Approval, RE 2008, PageID # 69538. The court overruled objections based on the scarcity of bone testing outside of Liaison Counsel due to the alleged "abundance of unfilled appointments" on Sundays between 1:00 p.m. and 3:45 p.m. from February 21, 2021 until April 2021. *Id.* at 69675-77.

## H.    Order granting fees and denying discovery.

On February 4, 2022, the district court overruled all of Hall Objectors' arguments and granted the fee motion with a handful of modifications. Fee Order, RE 2105. The court reduced the fee cap for individual-retained attorneys' fees from 27% to 25% (or from 10% to 8% in the case of clients retained after the settlement was announced). *Id.* at 72088. The court likewise reduced the Special Assessment for unrepresented claimants to 25%. *Id.* The court also moved the boundary line between post-settlement and pre-settlement caps from July 16, to August 20, 2020. *Id.* at 72136. That is— attorneys retained between July 16 and August 20, 2020 may charge 25% instead of 8%.

The district court claimed that the fee structure "will effectively pay for Plaintiffs' Counsel's work in a manner that provides for parity in recovery…whether the individual is represented by counsel or not." *Id.* at 72049. "[E]veryone in each of the ASA's Compensation Grid categories will receive the same financial award." *Id.* at 72065. "[E]very Claimant in a particular Compensation Grid category will receive the same amount as all others in that category." *Id.* at 72092. The court did "not view the fee structure proposed here as a way of creating incentives or disincentives for hiring counsel. Rather, the structure proposed by Movants and granted by the Court fairly compensates the lawyers and creates equity among Claimants." *Id.* at 72127.

As for hourly billing, the district court relied on the Special Master's review of the hours, which was filed contemporaneously with the fee order. *Id.* at 72114. Among other things, the master found that "nine firms listed in the Fee Petition that had not [previously] submitted time and expense reports to the Special Master." Report, RE 2105-1, PageID ## 72157-58. Additionally, seven individual timekeepers had not previously submitted billing. *Id.* The master's "review did not reveal any time entries involving time for setting up, managing, or operating any bone scan facility in Flint." *Id.* at 72164. However, "I did identify a single expense entry for a portion of the cost for the procurement of an XRF device. At the request of the plaintiff firm, that expense item has been removed from the expense compilation prepared by the Special Master." *Id.* The Special Master did not mention contract attorneys nor any objections, and instead reported adjusted totals based on rates claimed by the law firms. *Id.* at 72166.

In denying discovery, the district court found that disclosure of additional billing was unnecessary because the Sixth Circuit does not have case law similar to the Ninth Circuit. Fee Order, RE 2105, PageID # 72131. Additionally, "[t]he level of detail sought by the Hall Objectors would not enhance or otherwise assist the Court in making its decision, nor does it make any difference to any Claimant since the fee structure contributes to the parity principles set forth in the ASA itself." *Id.* The district court wrote that objectors had "not cited any authority to support their argument that they have a right to inspect detailed fee and cost information" and had "conceded that 'the Sixth Circuit hasn't ruled on this particular issue[.]'" *Id.* at 72140. The concession cited came in response to the district court's direct question about Sixth Circuit opinions after counsel had discussed out-of-circuit authority, and omits that Hall's counsel proceeded to discuss authority from another district in the Sixth Circuit. Transcript, RE 1906, PageID ## 66935-37 (discussing *Linneman v. Vita-Mix Corp.*, 394 F. Supp. 3d 771 (S.D. Ohio 2019)). The district court found that "fee and cost information has already been submitted to the Special Master and to the Court for independent *in camera* review." Fee Order, RE 2105, PageID # 72104. The court found that this review had been "exhaustive," which exceeded the requirements for a fee award based on a lodestar crosscheck, which "is not required in the Sixth Circuit." *Id.* at 72104-05.

Hall filed a timely notice of appeal on March 7, 2022. Notice, RE 2130. Hall's appeal has been consolidated with the appeals of other objector groups, led by Chapman and Roberts. Nos. 22-1197, 22-1605.

On June 22, 2022, the district court apparently *sua sponte* ordered that "payment for any single bone lead test shall not exceed $500.00." Order, RE 2180, PageID # 72987. The court stated that the "directive does not address or affect any determination of fees owed to any of the law firms involved." *Id.* at 72986.

## Summary of the Argument

The district court granted a common benefit award of indeterminate size, which assesses disparate fees from each Flint claimant depending on whether they retained an attorney. The fee award should be vacated because the process used to set it deprived class members of any meaningful opportunity to object to billing submitted only *in camera*. Independently, the Fee Order cannot stand because the burden of common benefit attorneys' fees falls disproportionately on unrepresented claimants, which violates basic equitable principles.

The claiming law firms filed scant records in support of their fee award in violation of Rule 23(h). Most firms provided only summary information (names, hours, and rates for each biller) in their public filings. The district court permitted Class and Liaison Counsel to submit their billing *in camera*, ensuring that the billing could not be challenged or reviewed by the underprivileged Flint claimants ordered to pay the fees. The district court did not address objections to the fee motion, such as the $11 million in "associate" attorney time claimed at $500/hour, which was actually performed by temporary contract attorneys at a tenth of this rate. These questionable rates based on a false characterization were applied to 74% of the hours claimed by one of the four co-lead firms. Another of the four firms refused to even disclose the names of attorneys

whose work supposedly entitle the firm to roughly 25% of the indeterminate-but-multimillion-dollar common benefit fee. This secrecy hobbles Flint residents. When corporations are ordered to pay legal fees, they are allowed to examine the billing. Any other procedure denies them of their due process rights. Flint residents deserve no fewer protections than a social media platform or kitchen appliance company.

Compounding the procedural error, the fee structure substantively fails. The uneven apportionment of the common benefit fee obligation requires the most vulnerable Flint residents—unrepresented claimants—pay the highest amount in common benefit fees as Special Assessments. Common benefit fees for unrepresented claimants amount to a total of 29.74%, while claimants represented before June 2020 effectively pay only 6.33% toward common benefit fees. The district court endorsed this arrangement as equitable because the sum of common benefit and privately-retained attorneys' fees will sometimes be 29.74%, but unrepresented claimants do not receive equal service as those with attorneys—they simply pay more for counsel's common benefit work. This Court should vacate the fee order for violating foundational equitable principles to the detriment of unrepresented claimants.

## Argument

**I.    The district court violated Rule 23(h) by refusing to allow objectors or class members to review the details of lead counsel's billing and costs records, which would have shown excessive attorneys' fees.**

**Standard of Review**: Orders denying discovery motions are reviewed for abuse of discretion. *Louzon v. Ford Motor Co.*, 718 F.3d 556, 560 (6th Cir. 2013). "An abuse of discretion occurs if the district court relies on clearly erroneous findings of fact, applies

the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment." *Id.* (internal quotation omitted). The interpretation of Federal Rule of Civil Procedure 23(h) is reviewed de novo. *Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244, 1252 n.3 (11th Cir. 2020); *see also Kalamazoo v. River Study Group v. Rockwell Intern. Corp.*, 355 F.3d 574, 583 (6th Cir. 2004).

***

### 1.   Class members must have access to examine and challenge fees and costs they may be ordered to pay.

The district court erred as a matter of law in failing to apply Rule 23(h).

Rule 23(h), added through an amendment to the Federal Rules in 2003, recognizes that "[f]ee awards are a powerful influence on the way attorneys initiate, develop, and conclude class actions" and that both the district court and objecting class members have significant roles to play in curbing the excesses of plaintiffs' counsel. Advisory Committee Notes on 2003 Amendments to Rule 23. As part of that process, class members or other claimants from whom payment is sought, are entitled to notice and a "full and fair opportunity" to contest "class counsel's completed fee motion." *Mercury Interactive*, 618 F.3d at 995. That entails an opportunity to "inquire into the bases for various charges and ensure that they are adequately documented and supported" and an opportunity to "provide the court with critiques of the specific work done by counsel." *Id.* at 994.

Following *Mercury Interactive*, a consensus of circuits read Rule 23(h) the same way. The Seventh Circuit held that a district court violates the rule when it "handicap[s]" objectors by forcing them to object without access to the "details of class counsel's

hours and expenses." *Redman v. RadioShack Corp.*, 768 F.3d 622, 638 (7th Cir. 2014). Likewise, the Eighth Circuit interpreted Rule 23(h) to purposely enable objectors to "provide the court with critiques of specific work done by counsel" and to furnish them with "information of what that work was, how much time it consumed, and how it contributed to the benefit of the class." *Keil v. Lopez*, 862 F.3d 685, 705 (8th Cir. 2017) (quoting *Mercury Interactive*, 618 F.3d at 994)). So too the Eleventh Circuit has held that Rule 23(h) "ensures that class members have full information when considering—and, should they choose to do so, objecting to—a fee request." *Johnson*, 975 F.3d at 1252. Disclosure required by Rule 23(h) sensibly allows the paying party—class members—to attack the basis of fees and costs.

No one questions that attorneys regularly provide billing statements to clients. And no one questions that, in the context of commercial litigation, if a prevailing plaintiff seeks to shift the responsibility for fees to a defendant corporation, that corporation has the right to review plaintiffs' counsel's bills. Indeed, the Eastern District's own local rules require that fee applicants file an affidavit "setting out in detail the number of hours spent on each aspect of the case" to allow "the party or parties against whom the award is requested [to] respond with any objections." E.D. Mich. L.R. 54.1.2. This is because "the Due Process Clause requires that opposing counsel have access to the timesheets relied on to support the fee order." *Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 545 (9th Cir. 2016) (finding an abuse of discretion where the district court relied on *in camera* inspection of detailed billing in a class action). This same reasoning should extend to class members and claimants being asked to foot the

bill.[3] *In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, 2018 U.S. Dist. LEXIS 140137, at *182 (N.D. Cal. Aug. 17, 2018) (Koh, J.); *cf. Linneman v. Vita-Mix Corp.*, 394 F. Supp. 3d 771, 784 (S.D. Ohio 2019), *rev'd on other grounds* 970 F.3d 621 (6th Cir. 2020). Flint residents deserve no fewer rights than a kitchen appliance company.

Yet the district court declined to follow the *Mercury Interactive* consensus, explaining that "[t]he Sixth Circuit does not have case law similar to the Ninth Circuit on this subject" and had not "ruled on this particular issue." Fee Order, RE 2105, PageID ## 72131, 72140. Of course, the district court departed not from one outlier decision of the Ninth Circuit, but from considered consensus of several circuits. Contrary to this consensus and the Eastern District's local rule, the district court reasoned that it was not necessary to allow objectors to review detailed billing because the Special Master and the court conducted an *in camera* review. Fee Order, RE 2105,

---

[3] The only precedential authority denying an objector's request for full access to class counsel's billing records proves this rule. In *Chambers v. Whirlpool*, the objector had not preserved the issue in the district court, and the fee was not paid by the class common fund. 980 F.3d 645, 672 (9th Cir. 2020). Rather, the *defendant* paid class counsel's fee independently of class recovery, had access to the timesheets, and strenuously opposed class counsel's fee request. *Id.* Here, attorneys' fees reduce class recovery dollar-for-dollar, so Flint claimants have identical due process stakes as the defendant in *Chambers*.

One unpublished decision in the Second Circuit afforded Rule 23(h) a less strict reading. *See Cassese v. Williams*, 503 Fed. App'x 55 (2d Cir. 2012). But *Mercury Interactive*'s approach "as adopted by many other circuits, is clearly preferable, both doctrinally and on policy grounds." William B. Rubenstein, 5 NEWBERG ON CLASS ACTIONS § 5:13 (5th ed. 2020). "[D]etail about counsel's time and efforts…make[s] the opportunity to object meaningful." *Id.*

PageID # 72140. In other words, the court did not believe it had any "duty to ensure that the class is afforded the opportunity to represent its own best interests." *Mercury Interactive*, 618 F.3d at 994.

Affirming the district court would generate a circuit split; something this Court is appropriately "wary" of doing. *Duncan v. United States*, 552 F.3d 442, 447 (6th Cir. 2009). But even without the phalanx of circuit authority interpreting Rule 23(h), *Mercury Interactive* and its progeny are correct as a matter of first principles. When the plaintiffs' lawyers seek fees from a common fund, the lawyers' interests are directly "adverse to the interest of the class in obtaining recovery." *Rawlings v. Prudential-Bache Properties*, Inc., 9 F.3d 513, 516 (6th Cir. 1993). The lawyers would like to take their fees from the fund; the class would like to retain the maximum possible share of the common fund. And once the size of the fund is settled, the defendants have no interest in "the manner in which that amount is allocated between the class representatives, class counsel, and unnamed class members" *Dry Max Pampers*, 724 F.3d at 718.

Even before the addition of Rule 23(h), courts recognized the impropriety of saddling class members with fees through an *ex parte* or *in camera* process. In *Reynolds v. Beneficial Nat'l Bank*, Judge Posner charted an exemplary path. 288 F.3d 277 (7th Cir. 2002). In that case, the district court judge requested that the class's lawyers submit their fee applications *in camera*, "lest the paucity of the time they had devoted to the case…be used as ammunition by objectors." 288 F.3d at 284. On appeal, the Seventh Circuit "disapprove[d]" the practice of in camera submissions, a practice it "had never heard of and can find no case law concerning." *Id.* at 286. "To conceal the applications

and in particular their bottom line paralyzes objectors, even though inflated attorneys' fees are an endemic problem in class action litigation and the fee applications of such attorneys must therefore be given beady-eyed scrutiny by the district judge." *Id.*

Pre-Rule 23(h), this Court also spoke in favor of open and transparent class fee proceedings. *Jordan v. Mark IV Hair Styles, Inc.*, 806 F.2d 695, 697 (6th Cir. 1986). Fee awards "must be made with an eye to moderation" with an aim to protecting "against public fear" that the class action device "encourages excessive attorney's fees." *Id.* (quoting 3B *Moore's Federal Practice*, ¶ 23.91 (1978)). And so, "if for no other reason but to allay suspicion, the court should typically take pains to allow a complete airing of all objection to a petitioner's fee claim." *Id.* (same). This remains as true today as it was 35 years ago: courts must "guard[] against the public perception that attorneys exploit the class action device to obtain large fees at the expense of the class." *Fessler v. Porcelana Corona De Mexico.* 23 F.4th 408, 419-20 (5th Cir. 2022). By treating fee objectors as second-class litigants, courts otherwise risk reifying the lamentable proverb that "[a] lawsuit is a fruit tree planted in a lawyer's garden." *Detroit v. Grinnell Corp.*, 495 F.2d 448, 469 (2d Cir. 1974) (quotation omitted).

Further, the court held that because it applied the lodestar method only as an "*optional*" crosscheck, that somehow diminished the objectors' interest in reviewing the detailed fee and cost information. Fee Order, RE 2105, PageID # 72140 (quoting with emphasis). For at least four reasons, this fails to answer Hall's motion for disclosure.

First, the optionality *vel non* of a lodestar crosscheck obviously has no bearing on detailed cost information, which the settling parties also refused to detail except in gross

summary. Second, no Sixth Circuit precedent clearly establishes that a lodestar crosscheck may be omitted entirely as optional. In reality, the lodestar crosscheck is an indispensable mechanism to prevent windfall fees. *Farrell v. Bank of Am. Corp., N.A.*, 827 Fed. App'x 628, 636 (9th Cir. 2020) (Kleinfeld, J., dissenting) (citing Justice Gorsuch, former judge Vaughn Walker, and seven state Ags in support of a mandatory crosscheck). But, at the very least, this Circuit prefers its use. *See Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009) (vacating a percentage-based fee that was not "on its face…unreasonable" because the district court had not provided analysis of the lodestar or other factors). A crosscheck is especially desirable in the context of a nine-digit "megafund" settlement that involves "economies of scale." *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996). Third, even if the crosscheck is optional, that does not negate the right of objectors to offer lodestar-based arguments when contesting Rule 23(h) fee requests. Fourth, and similarly, the lower court's rationale clashes with *Mercury Interactive*, *Redman*, *Keil*, and *Johnson* themselves, because each of those concerned fees requested and awarded on a percentage-basis. In several of those circuits, settled law makes crosscheck's fully optional, but this does not negate class members' right to examine the work allegedly incurred to create the common benefit. *See Farrell*, 827 Fed. Appx. At 630; *In re Home Depot Inc. Customer Data Sec. Breach Litig.*, 931 F.3d 1065, 1091 n.25 (11th Cir. 2019); *Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999).

The district court's reliance on the Special Master's report and an *in camera* review cannot substitute for disclosure. This is especially true because—as discussed in the next subsection—neither the court nor the Special Master even mention certain

troublesome aspects of the billing flagged by Hall. While the district court may have a preference for *ex parte* proceedings, they do not substitute for Rule 23(h) for two reasons.

First, impartial adjudicators, no matter how thorough, do not share claimants' interests in setting the attorneys' fee award. The district court and Special Master have not waived claims for lead exposure, and do not rely on the settlement net fees to compensate for their injuries. Because no one else shares claimants' interests in setting the attorneys' fee award, *claimants* must have access to the bases of the fees paid out of their recovery. Access to counsel's billing and costs records must be granted as a matter of "due process concerns" so that the fund's beneficiaries themselves have a full and fair opportunity to contest the fee motion. *In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, 2018 U.S. Dist. LEXIS 140137, at *182 (N.D. Cal. Aug. 17, 2018) (Koh, J.); *accord Lawler v. Johnson*, 253 So. 3d 939, 948-52 (Ala. 2017).[4]

Second, the *in camera* review actually further antagonizes class members' ability to challenge the fee award. The district court expressly credited evidence *outside of the public record*—billing entries submitted *in camera* and discussions with the Special Master

---

[4] At the fairness hearing, Liaison Counsel suggested that the State of Michigan endorsed of the fee structure, but this simply shows the importance of allowing *class members* to guard their own interests through direct review. In fact, the Settlement Agreement binds Michigan defendants *against* opining on the fee request unless asked by the district court. Settlement, RE 1394-2, PageID # 54160. The district court found it unnecessary to ask. Fee Order, RE 2105, PageID # 72132. Even if defendants could be counted on the defend class members interests—and the Flint water crisis vividly illustrates how the government often works *against* individual interests—the Attorney General publicly stated the fee request seemed like "a very high number" "[f]or a case of this nature." Objection, RE 1548, PageID.60223.

about the billing—in granting a multi-million-dollar award paid from Flint residents to their attorneys. Fee Order, RE 2105, PageID ## 72107, 72112, 72133. Class members cannot challenge evidence concealed from them, and the district court's reliance on inaccessible evidence independently merits reversal.

Although this Court has not interpreted Rule 23(h)(1)-(2), the ruling Hall seeks follows from this Court's recent class action jurisprudence. Just as "[c]lass members cannot participate meaningfully in the process contemplated by Federal Rule of Civil Procedure 23(e) unless they can review the bases of the proposed settlement and the other documents in the court record," they too cannot participate meaningfully in the process contemplated by Rule 23(h) unless they can review the bases of the proposed fee and cost motion. *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 309 (6th Cir. 2016).

*Shane Group* involved an objector's appeal from the approval of a class settlement, and a process in which "at the parties' behest, [the district court] sealed from public view most of the court filings and exhibits that underlay the proposed settlement." *Id.* at 304-05. In no uncertain terms, this Court reversed the use of such a clandestine process: there is "a strong presumption in favor of openness as to court records" and that presumption "should be applied with particular strictness" in class action cases. *Id.* at 305 (internal quotations and alterations omitted). "Moreover, the greater the public interest in the litigation's subject matter, the greater the showing necessary to overcome the presumption of access." *Id.* Here, counsel's billing records became "judicial records" by crossing the "line" into the "adjudicative stage" of

proceedings. *Id.* No reason exists, let alone the necessary "compelling" one, to justify shielding those records from the class and the public.[5]

Indeed, far from exempting billing records from the general rule of openness, *Shane Group* faulted counsel for submission of deficient records: "class counsel provided no backup whatsoever—no time records, no descriptions of work done—in support of their hours … [but just] a single page of documentation for each firm, listing only the employee names, titles, rates, hours, and—by multiplying the rates and hours—the total lodestar for that firm." 825 F.3d at 310. Here, most firms filed only this sort of deficient summary. Co-Liaison Counsel Levy Konigsberg, provided even less, including only a purported total number of hours. Stern Declaration, RE 1458-3. The Fee Motion promised that "Levy Konigsberg, LLP…will provide its lodestar separately" (Fee Motion, RE 1458, PageID # 57190). To date, the firm has not even identified the attorneys whose work justifies awarding roughly 25% of the entire common benefit award.

Although Hall's motion briefed *Shane Group*,[6] the fee order entirely fails to mention it. The lack of a "reasoned response" from the district court is itself independent error. *Johnson*, 975 F.3d at 1252; *cf. also Linneman*, 970 F.3d at 634 (vacating

---

[5] Appellees may argue that ongoing litigation against non-settling plaintiffs makes disclosure problematic, or that privileged impressions might exist in their detailed billing. Hall offered to receive the detailed billing under the protective order. Discovery Motion, RE 1586, PageID # 61010. Any privileged remarks could be protected with limited redactions, but withholding class action records "must be narrowly tailored to serve that reason." *Shane Group*, 825 F.3d at 305.

[6] Discovery Motion, RE 1586, PageID ##60988, 60990-91, 61009-10.

fee award where district court had offered an "insufficient" explanation of the value of the settlement).

**2.    The concealment of detailed billing and costs prejudiced objectors.**

Hall, and all Flint claimants, suffered prejudice from the denial of the right to review counsel's billing and costs records. Of course, Hall cannot be *certain* what counsel's billing records would show. And thus the deprivation of the ability to "develop and present his evidence and/or arguments below…will help to establish prejudice." *Oldham v. O.K. Farms, Inc.*, 871 F.3d 1147, 1151 (10th Cir. 2017). But the record below suggests detailed billing would confirm at least two categories of likely excessive attorneys' fees and expenses.

**First, counsel's invoices would have likely revealed excessive contract attorney billing.** Discovery Motion, RE 1586, PageID #61007-08; Chapman Motion, RE 1710, PageID #62283-84; Attendance Motion, RE 1736, PageID #62812 & n.2; Discovery Reply, RE 1827, PageID # 65163-64.

Notwithstanding the fact that an "elevated level of candor" is called for when seeking fees in an effectively "*ex parte*" proceeding,[7]  the Napoli Shkolnik co-liaison firm misrepresented dozens of contract attorneys as "associates" in their submissions below. Declaration, RE 1548-7, PageID # 60284-85; Discovery Motion, RE 1586, PageID # 61007. Napoli submitted more than $11 million in lodestar billing for these individuals, with all but one billing at rate of more than $500 per hour. Objection, RE 1548, PageID # 60241; Declaration, RE 1548-7, PageID # 60286. "As a general matter,

---

[7] *Ark. Teachers Ret. Sys. v. State Street Corp*, 25 F.4th 55, 65 (1st Cir. 2022)

contract attorneys are 'attorneys who are not permanent employees of the law firm, are hired largely from outside staffing agencies, are not listed on counsel's law firm website or resume, are paid by the hour, and are hired on a temporary basis to complete specific projects related to a particular action.'" *In re Anthem Inc. Data Breach Litig.*, 2018 WL 3960068, 2018 U.S. Dist. LEXIS 140137, at *124 (N.D. Cal. Aug. 17, 2018) (Koh, J.) (condemning contract attorney markup of "approximately 729%").

The Hall Objectors flagged this problem with the available billing (*id.*), but neither the Special Master nor the district court mention the issue. Instead, the district court found that the undisputed declaration documenting the misclassification of contract attorneys as "associates" was "improperly raised." Fee Order, RE 2105, PageID #72127. The district court does not explain the alleged impropriety. To the extent the district court's analysis assumes that class members cannot object to Liaison Counsel awards paid out of class recovery, this constitutes reversable error.

Discovery would have likely demonstrated that counsel hired these contract attorneys at rates between $25 and $75 per hour. Declaration, RE 1548-7, PageID #60285-86. "[T]here is absolutely no excuse for paying these temporary, low-overhead employees $40 or $50 an hour and then marking up their pay ten times for billing purposes." *In re Polyurethane Foam Antitrust Litig.*, 168 F. Supp. 3d 985, 1012-13 (N.D. Ohio. 2016) (cleaned up). The rates here are "neither reasonable nor efficient." *City of Westland Police & Fire Ret. Sys. v. Metlife, Inc.*, 2021 WL 2453972, 2021 U.S. Dist. LEXIS 112107, *9 (S.D.N.Y. Jun. 15, 2021) (rejecting proffered rates of $390-425/hr for project attorneys doing document review and reducing by 50%). The astonishing

number of hours billed by Napoli Shkolnik's contract attorneys (22,001 of their claimed 29,411.1 hours, Bednarz Declaration, RE 1548-7, PageID # 60286) raises questions about what, exactly, they were doing. The inflation of lodestar billing through non-beneficial "make work" is an especially acute problem in the context of fee requests that accompany large settlements. Stephen J. Choi, Jessica Erickson, & Adam C. Pritchard, *Working Hard or Making Work? Plaintiffs' Attorney Fees in Securities Fraud Class Actions*, 17 J. EMPIRICAL LEGAL STUD. 438 (2020). Regardless of the caliber of these contract attorneys, their billing rate for reviewing documents was too high: "[a] Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn." *Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir. 1983). The market rate is best determined by what a sophisticated paying client is willing to pay. *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). Hall's motion for discovery sought information precisely relevant to that question, but the district court disallowed it. Instead, it allowed Liaison counsel, and the Cohen Milstein class firm to charge "Bentley rates, not Cadillac rates" without even "explain[ing] why." *Shane Grp.*, 825 F.3d at 310.

Additionally, for expenses relating to bone scanning, objectors could have shown whether liaison counsel used their monopolistic clinic as a profit center, charging unrepresented and unaffiliated claimants $500 for scan results that appear to cost Liaison Counsel a fraction of that price. Chapman Motion, RE 1710, PageID # 62283-84. Such a markup would be ethically improper. State Bar of Michigan, Formal Opinion RI-364 (Sept. 25, 2013), *available at* https://www.michbar.org/opinions/ethics/numbered_opinions/ri-364. And ethical

impropriety is a reason to reduce, or even sometimes deny, any fee award. *E.g., Rodriguez v. Disner*, 688 F.3d 645, 655 (9th Cir. 2012); *In re World Trade Ctr. Disaster Site Litig.*, 754 F.3d 114, 127 (2d Cir. 2014) ("ethical concerns" affect counsel's quality of representation). It is a time worn principle of "policy as well as morality" that a "trustee who has acted dishonestly or fraudulently" should not receive "the same compensation with him who has acted uprightly in all respects." *Barney v. Saunders*, 57 U.S. 535, 542 (1854). This principle rings especially true in class action proceedings where "[a]ssuring the integrity of judicial proceedings is an important public policy consideration." *Ark. Teacher Ret. Sys. v. State St. Bank & Trust Co.*, 512 F. Supp. 3d 196, 208 (D. Mass. 2020), *aff'd* 25 F.4th 55 (1st Cir. 2022). And that means, "among other things, 'courts should look to the various codes of ethics as guidelines for judging the conduct of counsel' in making fee awards." *Id.* at 208-09 (quoting *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 216, 222 (2d Cir. 1987)); *see also United States ex rel. Taxpayers Against Fraud v. GE*, 41 F.3d 1032, 1047 (6th Cir. 1994) ("the issue of excessive fees raises serious ethical questions that are somewhat unique to the legal profession.").

But instead of holding liaison counsel to its duty to document these expenses— expenses again visited solely upon unrepresented and unaffiliated claimants—the district court simply set an unsubstantiated ceiling of $500. Order, RE 2180, PageID #72988. Even if there were not the problem of unfairness to unrepresented and unaffiliated claimants, the court provided no reasoned response to the objections to this potentially marked-up payment nor any "reasoning explaining its decision to accept

[liaison] counsel's contention" that $500 was a fair sum for the cost of bone scanning. *Halley v. Honeywell Int'l, Inc.*, 861 F.3d 481 501 (3d Cir. 2017). That violated Rule 23(h).

**Second, Hall's review of detailed billing records would have likely revealed the inclusion of time that was not performed for common benefit.** Objection, RE 1548, PageID # 60239-41; Discovery Motion, RE 1586, PageID # 60997-61000.

Courts must exclude non-beneficial time when accounting for lodestar as a matter of black letter law. Compensable work is that "expended in pursuit of the ultimate result achieved." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) (internal quotation omitted). It "must be useful and of a type ordinarily necessary to secure the final result obtained from the litigation." *Binta B. v. Gordon*, 710 F.3d 608, 629 (6th Cir. 2013) (quoting *Pa. v. Del. Valley Citizens Council for Clean Air*, 478 U.S. 546, 561 (1986)). For common fund awards, compensable time must be in furtherance of common, not personal, benefit. *Lindy*, 540 F.2d at 111; CMO, RE 507, Page ID # 15829. In fact, co-Liaison Counsel not only recognized this principle, they accused Class Counsel of flouting it, by disguising self-serving client solicitation work as a "common benefit" mapping project. Objection, RE 1548, Page ID # 60240 (citing Cross-Motion, RE 444, Page ID # 14114). Likewise, Class Counsel argued that Liaison Counsel spent excessive time organizing "free dinner" type meetings designed to sight up clients. Motion for Replacement, RE 404, PageID # 13291. But the firms "agreed *ex ante*" to split common benefit fees, eliminating their incentive to scrutinize each other's hours. Fee Motion, RE 1458, PageID # 57182.

When confronted with the possibility that non-beneficial time spent, for example, on bone scanning, was included in Liaison Counsel's submission, co-Liaison Counsel averred that there had been no such time included notwithstanding having cited it in his initial declaration in support of their fee request! Stern Declaration, RE 1796-2, PageID # 64582. And, without permitting objecting Flint residents to verify that claim, the district court simply approved the Special Master's review finding no billing entries relating to bone scanning. Fee Order, RE 2105, PageID # 72114. Even if Liaison Counsel did exclude bone scanning work from their lodestar, work spent on protecting the bone testing monopoly to the detriment of claimants unable to get these test results is merely one species of the general problem. And even if one believes that an opaque Special Master review process can properly substitute for transparent class and public scrutiny under Rule 23(h), nothing negates the general point that the hours may encompass individual client pursuits, not merely "common benefit" work. It is not enough to say that the entries "were appropriately related to the overall litigation or settlement activities." *Id.*

The process that occurred behind closed doors below can be contrasted with other courts than have permitted fee objectors to engage in an open and adversarial process before a special master. *See, e.g.*, *Kaplan v. Rand*, 192 F.3d 60, 65 (2d Cir. 1999); *In re Anthem, Inc. Data Breach Litig.*, 2018 U.S. Dist. LEXIS 140137, 2018 WL 3960068 (N.D. Cal. Aug. 17, 2018); *In re Johnson & Johnson Derivative Litig.*, 2013 U.S. Dist. LEXIS 167066, 2013 WL 6163858 (D.N.J. Nov. 25, 2013). Here the Special Master simply issued a report vouching that the claimed hours do not significantly depart from

periodic reports received by the Master and do not include time spent on setting up a bone scanning facility. The report does not even address the misrepresentation of contract attorneys that the Hall Objectors flagged.

Simply put, without allowing objectors to investigate counsel's billing and costs, the district court was unable to undertake the reasoned analysis required under Rule 23. *E.g., Moulton*, 581 F.3d at 352; *Jordan*, 806 F.2d at 697. Transparency instills "[p]ublic confidence in the fairness of attorney compensation in class actions" which "is vital to the proper enforcement of substantive law." *Laffitte v. Robert Half Int'l*, 376 P.3d 672, 688-92 (Cal. 2016) (Liu, J., concurring). But the process below was anything but transparent. This Court should reverse the district court's failure to comply with Rule 23(h).

## II. By charging certain claimants Special Assessments, the fee order violates a foundational principle of the common fund doctrine: fees must be spread uniformly.

**Standard of Review:** Whether the procedures and methodology used for awarding fees are permissible is a legal issue reviewed de novo. *Mercury Interactive*, 618 F.3d at 992; *see also Garner v. Cuyahoga County Juvenile Court*, 554 F.3d 624, 641 (6th Cir. 2009). The ultimate fee award is reviewed for abuse of discretion. *Linneman*, 970 F.3d at 624. A legal error in the fee analysis constitutes an abuse of discretion. *Rembert v. A Plus Home Health Care Agency LLC*, 986 F.3d 613, 616-17 (6th Cir. 2021)

*** 

Dating back to the Eighteenth Century, the default "American Rule" regarding attorneys' fees dictates that the prevailing party in an action may not ordinarily recover

attorneys' fees in the absence of a statute or enforceable contract providing for a fee award. *Shimman v. Int'l Union of Operating Eng'rs, Local 18*, 744 F.2d 1226, 1229 (6th Cir. 1984) (*en banc*). But an equitable exception to the American Rule often allows counsel to obtain fees in conjunction with class action settlements: the common fund, or relatedly, common benefit rule. This "exception allows an award of fees to a plaintiff whose suit creates, enlarges, or protects a fund shared by members of a class." *Id.* at 1234. "The doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense." *Geier v. Sundquist*, 372 F.3d 784, 790 (6th Cir. 2004) (quoting *Boeing v. Van Gemert*, 444 U.S. 472, 478 (1980)). A common fund fee award "prevent[s] this inquity by assessing fees against the entire fund, thus spreading fees proportionately among those benefitted by the suit." *Id.* (quoting *Boeing*, 444 U.S. at 478).

Among other prerequisites to a common fund fee award, the award must "operate to spread the costs ***proportionately***" among the beneficiaries of the common work. *Shimman*, 744 F.2d at 1235 (quoting *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 393-94 (1970) and adding emphasis). To do equity, absentees must be compelled to contribute "***equally*** to the litigation expenses." *Mills*, 396 U.S. at 392 (emphasis added). That is, "the purpose of the rule is to spread the cost of the litigation ***evenly*** among those who have benefitted." *Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores*, 54 F.3d 69, 72 (2d Cir. 1995) (emphasis added). The doctrine requires beneficiaries of a fund "in the absence of contract—to contribute ***ratably*** to the cost

of securing the common benefit." RESTATEMENT (THIRD) OF RESTITUTION & UNJUST ENRICHMENT § 29 cmt. a (2011).

The district court violated this cardinal rule by assessing common benefit fees unevenly against the beneficiaries of the global settlement fund. Namely, the district court approved Class and Liaison Counsel's request for a flat 6.33% "common benefit component" of the gross common fund, but then it also approved a second set of "common benefit assessment[s]," the Special Assessment, against claimants who did not retain individual counsel or only retained individual counsel late.[8] Fee Order, RE 2105, PageID # 72050. These beneficiaries, including both class and non-class members, are being charged an additional 17 or 25% of the value of their settlement award. Conversely, claimants who had retained counsel before the settlement's cutoff date are not required to pay any Special Assessment to Class and Liaison Counsel from their settlement award. As a result, on a percentage basis, claimants without individual representation will be paying more than a **four times greater** share of the common benefit fees to Class and Liaison counsel. And claimants with late-retained representation will be paying more than a **three times greater** share of the common benefit fees from their settlement recoveries.

Judge Aldisert, writing for the *en banc* Third Circuit in *Lindy Bros. Builders v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102 (1976), explains exactly why this

---

[8] The district court uses "CBA" to refers both the global 6.33% Common Benefit Assessment on the gross common fund, and the variable 0-to-25% special assessments (net the global CBA and expenses). RE 2105, PageID ## 72088-89. Appellants use "Special Assessment" for precision.

discrepancy is untenable under the common benefit doctrine. There, lead counsel created a $29 million global settlement fund, benefitting three types of claimants: (1) those individually represented by lead counsel, who had contingency agreements of 33.33%; (2) those individually represented by other attorneys, who had contingency agreements of between 20-40% with those attorneys; and (3) those not individually represented by any counsel until after settlement approval. *Id.* at 107, 119. The district court awarded a $1.13 million gross fee, but it declined to spread that fee equally among the three subgroups in equal proportion to their shares of the common fund. Rather, it ordered the category 3 unrepresented claimants "to pay 81.6 per cent of the attorneys' fee from the settlement fund, even though their aliquot share of the fund was only about…27.8 per cent." *Id.* at 108. Because this award deviated from a ratable apportionment, only "extraordinary circumstances" could support it. *Id.* at 119. But the district court could not demonstrate such circumstances: instead, it offered only the "concern" that if not for the uneven common fund award "the unrepresented claimants would contribute a disproportionately small percentage of their recoveries to attorneys" because, unlike the represented claimants, they had not agreed to pay 20-40% of their recoveries to individually retained counsel. *Id.* at 119. The district court here relies on the same rationale for the uneven apportionment of the common benefit fee. Fee Order, 2105, PageID # 72065 ("every Claimant pays the same effective fee").

Both concerns are "misplaced." *Lindy*, 540 F.2d at 119. Courts "should not…mix[] considerations of the fee determined by equitable principles (the equitable fund award) with considerations of the fees dependent on private contracts." *Id.* at 119-

20. The "task" is "to determine the fee *from the fund* to which [lead counsel are] entitled on the basis of quantum meruit." *Id* (emphasis in original). "Once that fee [is] determined, the general rule is that it be allocated pro rata among the claimants. Private arrangements individual members of the class may have with counsel are simply irrelevant." *Id.*

To affirm the district court, this Court would have to split with *Lindy*. But there is very good reason for the longstanding uniformity principle recognized in *Lindy*. Any other rule would provide lead plaintiffs or their counsel with an intolerably dangerous tool to advance their self-interests at the expense of disfavored or vulnerable subgroups of claimants. Thus, in *Shimman*, the rule of proportionality prevented the plaintiff, who had received a six-figure individual damages award, from spreading the lawsuit costs among all fellow union members, who had received only the "common benefit of restoring union democracy." *Id.* at 1235. Whether or not restoring union democracy was a compensable benefit, Shimman's proposal to "pay no greater portion of the fees than any other union member who benefitted only incidentally" would have violated the principle that fees must be spread "in proportion to benefits." *Id.*[9]

In another case, class counsel leveraged this tool to extract a pledge from one group of claimants not to object to class counsel's fee request. *In re Diet Drugs Prod. Liab. Litig.*, 582 F.3d 524, 554 (3d Cir. 2009) (Ambro, J., dissenting in part). In exchange for

---

[9] Other circuits have followed the rule of *Shimman* that this equitable doctrine only permits "the assessment of attorney fees in proportion to the benefits received." *See e.g., Aguinaga v. United Food & Commercial Workers Int'l Union*, 993 F.2d 1480, 1484 (10th Cir. 1993) (also citing cases from the Fifth and Eleventh Circuits)

that pledge, class counsel offered the now-favored group a 2/3 reduction in their overall common benefit assessment. *Id.* Over Judge Ambro's dissent, and without mentioning *Lindy*, the *Diet Drugs* majority affirmed the fee award despite the disparate assessments. It found that although the district court's "logic" was "assailable," it would be "unwise" to vacate the entire fee award when the raw magnitude of the disparate treatment (6% vs 2%) was not great "in the context of the fee award as a whole." *Id.* at 449, 451. And the appellants had forfeited a lesser remedy. *Id.* at 448 n.48. But Judge Ambro was correct: the award violated the established rule that fees be spread in equal proportion among all beneficiaries of the common work. *Id.* at 556-57 (Ambro, J., dissenting in part). *Diet Drugs* demonstrates how class counsel is likely to misuse the tool of disparate fee assessments to reward favored subgroups and punish disfavored ones.

It's worse here. Just as in *Lindy*, the Special Assessments impose the greatest tax on the very most vulnerable Flint resident claimants—those without individual counsel. From Class and Liaison Counsel's perspective, who better to extract extra fees from than those farthest away from the bargaining table? *See Dry Max Pampers*, 724 F.3d at 715. It is the not the difference between opt-outs paying 2% and 6% of their recovery as in *Diet Drugs*; it is the difference between claimants paying 6% and approximately 30% (or 23% for late-represented claimants) of their recovery. Preventing inequities like this is exactly why the district court is supposed to act as a "fiduciary for the class," "with a jealous regard" for the rights and interests of claimants in the settlement fund and an "eye to moderation." *Mercury Interactive*, 618 F.3d at 994-95; *Jordan*, 806 F.2d at 697 (internal quotation omitted).

Similar to the *Lindy* district court, the court below reasoned that this unequal, and indeed punitive, treatment of the most vulnerable claimants, creates "parity" and "equity" among all claimants in terms of the ultimate amounts they will recover. Fee Order, RE 2105, PageID ## 72049, 72065, 72090 n.24, 72092, 72129; Transcript, RE 1906, PageID ## 66928, 66950-51, 66953. Put simply, the court justifies inequality of treatment on the grounds that it will ensure equity of outcome. But that view is fundamentally mistaken as a matter of fact and law. Unrepresented claimants do not receive equal service in navigating the complex claims litigation process. In fact, unrepresented claimants received inferior access to bone lead testing that could enhance their claims, which was virtually monopolized by Liaison Counsel for the benefit of their clients. Under the district court's award, unrepresented and late-represented claimants will subsidize Liaison Counsel who designed the unequal access to bone testing and therefore unequal awards from the settlement fund. They will also be at a disadvantage for accessing higher tiers of claim recovery even outside the bone scanning path. In any event, common benefit principles demand equal treatment of all beneficiaries. Fees must be divvied "in proportion to benefits." *Shimman*, 744 F.3d at 1235.

In this case, thousands of Flint residents consciously abstained from hiring individual counsel, navigating a toilsome and difficult claims process on their own without the services that individually-represented claimants received. Presentation, RE 1897-1, PageID # 66331 (roughly half of registrations filed by unrepresented claimants); Final Approval, RE 2008, PageID # 69677 (42 unrepresented claimants

managed to sign up for bone scanning). Yet the district court's reward for that cost-conscience labor was an extra bill in the amount of 25% of their settlement award to Class and Liaison Counsel. Indeed, Liaison Counsel at the fairness hearing candidly admitted that the settlement was attempting to avoid "reward[ing] people" "for not having lawyers." Transcript, RE 1906, PageID # 66956. This frank admission undermines the district court's unsupported finding that "the fee structure proposed here [was not] a way of creating incentives or disincentives for hiring counsel." Fee Order, RE 2105, PageID # 72129. In operation, the Special Assessments act as rebates for private counsel; unrepresented claimants are cross-subsidizing pooled fees on behalf of claimants who retained private counsel.

The district court elided this reality, instead addressing strawman arguments. The district court found that objectors "ignore[] the fact" that individually-unrepresented claimants derived a benefit from the settlement itself, but Hall does not object to all claimants "pay[ing] for that work on the same basis." *Contra* Fee Order, RE 2105, PageID # 72129. Rather, he objects to requiring late-represented and unrepresented claimants to bear a *disproportionate* share of those common benefit fees. Allowing individually-represented claimants to effectively offset their common benefit fees by the cost of their individually-retained counsel violates the principle that class members should pay for common benefit work in equal measure.

Even if one accepts the district court's premise that equalizing outcomes in the claims process (*i.e.* "parity") is a good reason to assess additional common benefit fees unevenly against claimants who decided not to retain individual counsel, the fee award

still fails. The award does not even result in the "equality of outcomes" that the district court desired. *Compare Lindy*, 540 F.2d at 119 n.13 ("[t]he district court's solution was only marginally effective"). For example, Hall's counsel qualifies as late-retained individual counsel, and so under the fee order would be entitled to 8% of Hall's award. Fee Order, RE 2105, PageID # 72143. But Hall's counsel, under its retainer, is representing Hall *pro bono* and has disclaimed that fee. Declaration, RE 1548-6, PageID # 60275. Thus, Hall, would obtain a higher share of his claim (83%) than would other claimants who are paying the full 25% to counsel. Hall's counsel explained this in detail to the court and Liaison Counsel confirmed Hall's understanding. Transcript, RE 1906, PageID ## 66954-55. If any other claimants had earlier retained *pro bono* counsel, those claimants could preserve the entirety of their claim awards (net the proportional 6.33% common benefit assessment). Because the 25% and 8% figures are simply maximum caps, they fail to create parity.

Hall's counsel provided another example at the fairness hearing: depending on the identity of the claimant's counsel, some claimants will have an amount up to $500 deducted from their settlement awards as a charge for the bone scanning test, while others, who are represented by Liaison Counsel or affiliated firms, will not. Transcript, RE 1906, PageID # 66953-54, 66958; Order, RE 2180 (authorizing $500 charges). Rather than grapple with this reality, the district court simply derided it as "misinformation" at the hearing and then ignored it in the final fee order. Transcript, RE 1906, PageID ## 66958-59, 66967. The lack of a "reasoned explanation" leaves "analytical gap" between the record and the court's order. *Shane Grp.*, 825 F.3d at 310.

Nor did the court consider the unintended consequences of approving such a fee structure. Imagine a hypothetical attorney Tom Green, a former delivery man who went into law to make a clever buck.[10] Under the structure approved by the court, Mr. Green can provide a service simply by approaching any unrepresented claimants and offering to split the 8% special assessment tax between them. That way, the claimant will save 4% and Mr. Green will net a 4% fee even though he has rendered no substantive services. Although Mr. Green's ethical duties would surely demand some attention to his client, the fact that a hypothetical client would unequivocally *still* be better off even if Mr. Green paid them no attention demonstrates that the fee structure is seriously malfunctioning. The fee structure has effectively established a legal racket from which Mr. Green is extricating his clients. This business opportunity may exist for years in the case of (non-class) minor claimants, who may continue to claim benefits from the fund for future claims until it is depleted or until every child exposed to Flint water turns 18 years old.

What is more, the court's "equity" and "parity" reasoning fails to reconcile the fact that individually-represented claimants had far greater access to more valuable tiers of settlement awards, via bone scanning, blood results or diagnostic test. Liaison Counsel jealously guarded access to bone testing, allowing Flint residents who had not retained Liaison Counsel or an allied or referring firm just one day a week for 10 weeks

---

[10] *The Tom Green Show: Undercutters Pizza*, (MTV television broadcast 1999), *available at* https://www.youtube.com/watch?v=PdfztAY3qoU (last visited Nov. 15, 2022).

during Michigan's second wave of COVID to receive bone testing. Presentation, RE 1897-1, PageID # 66331. We know that Liaison counsel tested thousands of its own clients and aspired to test more than 9000 people; 3924 clients referred from other firms alone were tested. Presentation, RE 1897-1, PageID # 66354; Exhibit, RE 2247, PageID # 73898.

But out of perhaps 80,000 Flint residents not represented by Liaison Counsel or an allied firm, just 197 ultimately received bone tests. *Id.* at 66350. The deadline to have a bone test count under the settlement agreement was April 27, 2021, an obscure date not communicated in any notice to class members. Nor was the dramatic effect of bone testing explained in class notice. A child whose guardian can prove she resided in Flint from 2014 to 2016 is entitled to 0.15x shares of the settlement fund. But one who had a bone result that shows anything above zero—as everyone has whether or not they were exposed to lead-laced water—receives three times as much (0.5x shares) as a one without test results.

Claimants who retained individual attorneys, in other words, obtained benefits and services from that retention. And the district court required claimants without individual representation to pay the same percentage (or even more compared to plaintiffs with less expensive retained counsel) without receiving the same individual services. That is simply not equitable. Transcript, RE 1906, PageID ## 66949-50.

In sum, neither Hall nor anyone else argued that "individuals who did not retain counsel…should not have to pay for attorney fees and costs." *See* Transcript, RE 1906, PageID # 66953; *contra* Fee Order, RE 2105, PageID # 72129. Under well-established

law, however, those individuals should not have to pay for a *disproportionate* share of the common benefit fees and costs. *Lindy*, 540 F.2d at 119-120. And they definitely should not have to pay a disproportionate share to subsidize other claimants who voluntarily retained and received individual representation. *Id.* Although equity is flexible, "in the federal system, at least, that flexibility is confined with the broad boundaries of traditional equitable relief" — in this case, by the longstanding rule that fee spreading must be proportional across those obtaining the common benefit. *Grupo Mexicano de Desarollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 322 (1999); *see also In re Roundup Prods. Liab. Litig.,* 544 F. Supp. 3d 950, 959-60 (N.D. Cal. 2021) (*Grupo Mexicano* limits MDL fee structures). Rule 23 too, "limits judicial inventiveness" and the inequitable Special Assessments against unrepresented and late-represented claimants exceed the bounds of Rule 23(h). *In re Nat'l Prescription Opiate Litig.*, 976 F.3d 664, 672 (6th Cir. 2020) (internal quotation omitted). "MDLs [and other consolidated aggregation litigation] are not some kind of judicial border country, where the rules are few and the law rarely makes an appearance." *In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 844 (6th Cir. 2020). This court should reverse the district court's failure to adhere to the "basic principle of the common fund doctrine." *Holbrook v. Pitt*, 748 F.2d 1168, 1176 (7th Cir. 1984).

## Conclusion

For these reasons, this Court should vacate the district court's order awarding fees or modify it to eliminate the disproportionate special assessments.

Dated:  November 16, 2022                    Respectfully submitted,


                                             */s/ Adam E. Schulman*
                                             Adam E. Schulman
                                             HAMILTON LINCOLN LAW INSTITUTE
                                             CENTER FOR CLASS ACTION FAIRNESS
                                             1629 K Street NW, Suite 300
                                             Washington, DC 20006
                                             Telephone: (610) 457-0856
                                             Email:  adam.schulman@hlli.org

                                             *Attorneys for Appellants Raymond Hall and
                                             Ashley Jankowiak*

**Certificate of Compliance with Fed. R. App. Proc. 32(a)(7)(C)**

This brief complies with the type-volume limitation of Fed. R. App. Proc. 32(a)(7)(B) because this brief contains 12,757 words, excluding the parts of the brief exempted by Fed. R. App. Proc. 32(a)(7)(B)(iii), as counted by Microsoft Word 2019.

This brief complies with the typeface requirements of Fed. R. App. Proc. 32(a)(5) and the type style requirements of Fed. R. App. Proc. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in 14-point Garamond font.

Executed on November 16, 2022.

*/s/ Adam E. Schulman*
Adam E. Schulman

**Proof of Service**

I hereby certify that on November 16, 2022, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Sixth Circuit using the CM/ECF system, which will provide notification of such filing to all counsel of record.

Executed on November 16, 2022.

/s/ Adam E. Schulman
Adam E. Schulman
HAMILTON LINCOLN LAW INSTITUTE
CENTER FOR CLASS ACTION FAIRNESS
1629 K Street NW, Suite 300
Washington, DC 20006
Telephone: (610) 457-0856
Email:  adam.schulman@hlli.org

*Attorneys for Appellants Raymond Hall
and Ashley Jankowiak*

**Addendum of Designations of Relevant District Court Documents**

As 6th Cir. R. 30(g) requires, Hall Appellants designate the following district court documents as relevant to this appeal:

RE #173, Order Granting in Part Consolidation, and Appointing Interim Co-Lead Class Counsel and Liaison Counsel, PageID ## 8072-76

RE #234, Order Delineating the Duties of Interim Co-Lead Class Counsel and Co-Liaison Counsel, PageID ## 8721-27

RE #404, Co-Lead Class Counsel's Amended Brief in Support of Motion for Replacement of Co-Liaison Counsel, PageID ## 13286-313

RE #444, Co-Liaison's Cross-Motion to Discharge Interim Co-Lead Class Counsel, PageID ## 14110-35

RE #444-2, Declaration of Hunter Shkolnik, PageID ## 14139-72

RE #444-3, Expert Declaration of Maureen Carrill, PageID ## 14174-82

RE #507, Case Management Order Regarding Time and Expense Procedures, PageID ## 15825-52

RE #512, Transcript of Proceedings Status Conference June 18, 2018, PageID ## 15871-940

RE #620-3, Fourth Consolidated Amended Class Complaint for Injunctive and Declaratory Relief, Money Damages, and Jury Demand, PageID ## 17800-18022

RE #1268, Transcript of Proceedings August 26, 2020, PageID ## 39522-76

RE #1319-2, Excerpt of Exhibit to Settlement Agreement PageID ## 40788-831

RE #1341, Chapman Plaintiffs' Response to Joint Motion to Establish Settlement Claims Procedures and Allocation, PageID ## 41814-915

RE #1394-2, Amended Settlement Agreement, PageID ## 54121-211

RE #1458, Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursement of Expenses, PageID ## 57144-201

RE #1458-3, Declaration of Corey M. Stern in Support of Plaintiffs' Motion for an Award of Attorneys' Fees and Re-imbursement of Expenses, PageID ## 57226-30

RE #1458-3, Declaration of Hunter J. Shkolnik in Support of Plaintiffs' Motion for an Award of Attorneys' Fees and Re-imbursement of Expenses, PageID ## 57270-79

RE #1548, Objection to Plaintiffs' Motion for an Award of Attorneys' Fees, PageID ## 60212-46

RE #1548-3, Declaration of Raymond Hall, PageID ## 60252-54

RE #1548-5, Declaration of Ashley Jankowiak, PageID ## 60260-62

RE #1548-6, Declaration of Theodore H. Frank, PageID ## 60264-75

RE #1548-7, Declaration of M. Frank Bednarz, PageID ## 60277-360

RE #1586, Hall Objectors' Motion to Review and Respond to Hourly Billing and Costs; and for Discovery of Fee-Sharing Agreements and Invoices/Agreements Pertaining to Claimed Contract Attorneys, PageID ## 60978-61014

RE #1710, Chapman Plaintiffs' Motion to Review and Respond to Hourly Billing and Costs and for Discovery of Bone Scan Information, PageID ## 62272-97

RE #1710-1, Declaration of Mark R. Cuker, Esq., in Support of Chapman Plaintiffs' Motion to Review and Respond to Hourly Billing and Costs and for Discovery of Bone Scan Information, PageID ## 62298-343

RE #1736, Hall Objectors' Motion to Attend Further Conferences with Settling Counsel and for Settling Parties to Provide a Description of Non-Public Hearings, PageID ## 62792-822

RE #1796, Supplemental Memorandum in Support of Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursement of Expenses, PageID ## 64515-78

RE #1800, Transcript of Proceedings May 26, 2021, PageID ## 64607-56

RE #1802-2, Declaration of M. Frank Bednarz in Support of Reply, PageID ## 64671-88

RE #1825-2, Chapman Objectors' Exhibits in Reply in Support of Discovery Motion, PageID ## 65137-52

RE #1827, Hall Objectors' Reply in Support of their Motion to Review and Respond to Hourly Billing and Costs; and for Discovery of Fee-Sharing Agreements and Invoices/Agreements Pertaining to Claimed Contract Attorneys and Chapman Plaintiffs' Motion to Review and Respond to Hourly Billing and Costs and for Discovery of Bone Scan Information, PageID ## 65156-65

RE #1830, Order Denying Hall Objectors' Motion, PageID ## 65294-310

RE #1864, Co-Lead Class Counsel Michael Pitt's Motion for Reconsideration of this Court's Order Denying Hall Objectors' Motion, PageID ## 66115-18

RE #1864-1, Declaration of Michael Pitt, PageID ## 66120-30RE #1897-1, Co-Liaison Counsel Presentation Slides, July 12, 2021, PageID ## 66319-77

RE #1904, July 12, 2021 Hearing Transcript, PageID ## 66519-66763

RE #1906, July 15, 2021 Hearing Transcript, PageID ## 66875-67105

RE #1951, Order Granting in Part and Denying in Part Motion for Reconsideration, PageID ## 67986-90

RE #2008, Opinion and Order Granting Final Approval of a Partial Settlment, Granting Certification of a Settlement Class, Granting Appointment of Settlement Class Counsel, Denying Objections, and Adopting the Report and Recommendation, PageID ## 69537-69714

RE #2023-2, Exhibits in Support of Lowery Objectors Motion to Alter or Amend the Judgment Granting Final Approval, PageID ## 70386-70510

RE #2105, Opinion and Order Granting in Part and Denying in Part Plaintiffs' Motion for an Award of Attorney Fees and Reimbursement of Expenses, PageID ## 72046-144

RE #2105-1, Report of the Special Master on Time and Expense Submissions of Plaintiffs' Firms Pursuant to Order on Data Collection, PageID ## 72145-78

RE #2130, Notice of Appeal, PageID ## 72400-01

RE #2180, Order Establishing Procedures for Management of Claims Process and Expense Payment for Unrepresented Claimants and for Claimants with Multiple Counsel, PageID ## 72985-89