IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 22-1185
Consolidated with Nos. 22-1197, 22-1605

In re: FLINT WATER CASES

LUKE WAID,

*Plaintiff*

INDIVIDUAL PLAINTIFFS;
SETTLEMENT CLASS PLAINTIFFS

*Plaintiffs-Appellees*

v.

RICHARD DALE SNYDER, *et al.*

*Defendant*

RAYMOND HALL; ROBERT HEMPEL; ASHLEY JANKOWIAK

*Objectors-Appellants*

On Appeal from the United States District Court
For the Eastern District of Michigan,
No. 5:16-cv-10444-JEL-MKM

**Petition for Rehearing En Banc
of Appellants Hall and Jankowiak**

HAMILTON LINCOLN LAW INSTITUTE
CENTER FOR CLASS ACTION FAIRNESS

M. Frank Bednarz
Adam E. Schulman
1629 K Street NW, Suite 300
Washington, DC 20006
Telephone: (610) 457-0856
Email: adam.schulman@hlli.org

*Attorneys for Appellants Raymond Hall and
Ashley Jankowiak*

# TABLE OF CONTENTS

Table of Contents ................................................................................................ iv

Table of Authorities ............................................................................................ v

FRAP 35(b)(1) Statement ................................................................................... 1

Introduction ........................................................................................................ 1

Argument ............................................................................................................ 4

     I.     The panel's decision contradicts *Shane Group*, which it did not
even cite. ............................................................................................. 4

     II.    The panel's abandonment of *Shane Group* also departs from the
Seventh, Eighth, Ninth and Eleventh Circuits, which interpret
Rule 26(h) to require that objectors have access to the purported
basis for attorneys' fees ...................................................................... 8

     III.   The panel's holding also breaks from *Yamada*. .............................. 12

Conclusion ......................................................................................................... 15

Certificate of Compliance with Fed. R. App. Proc. 32(a)(7)(C) ..................... 17

Proof of Service ................................................................................................ 18

# TABLE OF AUTHORITIES

<u>Cases</u>

*In re Anthem Inc. Data Breach Litig.*,
  2018 WL 3960068, 2018 U.S. Dist. LEXIS 140137
  (N.D. Cal. Aug. 17, 2018) ........................................................................... 12

*In re Dry Max Pampers Litig.*,
  724 F.3d 713 (6th Cir. 2013) .................................................................... 11

*Fessler v. Porcelana Corona De Mexico*,
  23 F.4th 408 (5th Cir. 2022) ..................................................................... 12

*In re Hall*,
  4 F.4th 376 (6th Cir. 2021) ................................................................... 3, 5-6

*Johnson v. NPAS Sols., LLC*,
  975 F.3d 1244 (11th Cir. 2020) ................................................................ 4, 9

*Jordan v. Mark IV Hair Styles, Inc.*,
  806 F.2d 695 (6th Cir. 1986) .................................................................... 12

*Keil v. Lopez*,
  862 F.3d 685 (8th Cir. 2017) ...................................................................... 8

*Klier v. Elf Atochem N. Am., Inc.*,
  658 F.3d 468 (5th Cir. 2011) .................................................................... 14

*Lawler v. Johnson*,
  253 So. 3d 939 (Ala. 2017) ...................................................................... 12

*Lindy Bros. Builders v. Am. Radiator & Standard Sanitary Corp.*,
  540 F.2d 102 (3d Cir. 1976)(*en banc*) ......................................................... 7

*Linneman v. Vita-Mix Corp.*,
  394 F. Supp. 3d 771 (S.D. Ohio 2019) ................................................... 1, 12

*Linneman v. Vita-Mix Corp.*,
  970 F.3d 621 (6th Cir. 2020) .................................................................... 14

*In re Mercury Interactive Corp. Secs. Litig.*,
  618 F.3d 988 (9th Cir. 2010) ........................................................ 8, 9, 10, 11

*Mullane v. Central Hanover Bank*,
  339 U.S. 306 (1950). ................................................................................... 9

*Rawlings v. Prudential-Bache Properties*,
  9 F.3d 513 (6th Cir. 1993) ....................................................................... 11

*Redman v. RadioShack Corp.*,
  768 F.3d 622 (7th Cir. 2014) ............................................................... 8, 10

*Shane Grp., Inc. v. Blue Cross Blue Shield*,
  825 F.3d 299 (6th Cir. 2016) ................................................. 1-7, 14, 15

*United States v. Sineng-Smith*,
  140 S. Ct. 1575 (2020) .............................................................................. 6

*Yamada v. Nobel Biocare Holding AG*,
  825 F.3d 536 (9th Cir. 2016) .......................................................1, 12-14

Rules and Statutes

Cir. R. 32.1(b) ................................................................................................. 4

Fed. R. Civ. Proc. 23(e) ................................................................................. 6

Fed. R. Civ. Proc. 23(h) ................................................................6, 8, 9, 15

Fed. R. Civ. Proc. 23(h)(1)........................................................................... 10

## FRAP 35(b)(1) Statement

The panel's decision affirming an indeterminately large attorney's fee award for settlements in the Flint Water Crisis litigation conflicts with *Shane Grp., Inc. v. Blue Cross Blue Shield*, 825 F.3d 299 (6th Cir. 2016); consideration by the full court is necessary to secure and maintain uniformity of Circuit law. Furthermore, the proceeding involves a question of exceptional importance—the allocation of millions of dollars between attorneys and lead-poisoned Flint residents—and the panel decision conflicts with authoritative decisions of the Seventh Eighth, Ninth, and Eleventh Circuits in the process for awarding fees in class actions.

## Introduction

The district court expressly relied on detailed billing provided only *in camera* to approve an attorneys' fee award that directs about 29.74% or over $180 million of the available settlement money to attorneys. Normally, when a court orders a private party to pay attorneys' fees, the paying party may examine and challenge the evidence that the court relies on to order payment. Thus, a kitchen appliance company[1] or a medical manufacturer[2] can review and challenge fees that a party proposes they pay. The district

---

[1] *Linneman v. Vita-Mix Corp.*, 394 F. Supp. 3d 771, 784 (S.D. Ohio 2019).

[2] *Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 545 (9th Cir. 2016).

court denied this right to Flint residents, relying on evidence submitted *in camera* to grant a multimillion dollar award from some of the most disadvantaged people in America.

Contrary to the panel opinion, Flint residents ought to have as many rights as a kitchen appliance company. It is not that "due process affords them the right to review the detailed billing" (Slip Op. 16) in a vacuum, but that litigants have the right to review evidence that courts rely upon in ordering judgment against them. Indeed, in *Shane Group* this Court held that the "strong presumption in favor of openness as to court records" "should be applied with particular strictness" "in class actions." 825 F.3d at 305 (internal quotations and alterations omitted).

The Hall Objectors faulted the district court for entirely failing to grapple with *Shane Group*. The panel in turn extended the district court's refusal to address Hall's argument, not even citing the opinion. The panel opinion instead finds that objectors "were furnished enough information to have a sufficient basis on which to object" (Slip. Op. 16) but this principle—if it can be called that—raises several questions that the panel does not answer. How much evidence can a court hide from litigants in decisions against them? How should courts decide which evidence allows litigants to make a "sufficient" argument?

In embracing this notion, the panel deviates sharply from *Shane Group*, which provides a simple test for whether records ought to be public: whether "parties place material in the court record," which "the public has a strong interest in obtaining." 825 F.3d at 305 (internal quotation omitted). When a court relies on evidence submitted to it, a "strong presumption in favor of openness" exists because, among other reasons,

"the public is entitled to assess for itself the merits of judicial decisions." *Id.* This principle applies even more strongly here because absent class members must be able to assess their own options when confronting a class settlement. Only by interrogating evidence submitted to a court can litigants formulate arguments on their own behalf, as is necessary for adversarial proceedings. *Id.* at 309 ("Only then can they assess for themselves the likelihood of success on their claims.").

The alternative that the panel proposes—weighing whether class members have been "furnished enough information to object" requires courts to reject potential arguments that objectors themselves can never raise because they're cut off from the information to intelligently argue against secret bases for a fee award. That inverts both the presumption of openness and the principle that "courts do not typically tell counsel which positions they must take." *In re Hall*, 4 F.4th 376, 379 (6th Cir. 2021).

Under *Shane Group*, and precedent from other circuits, the answer is straightforward. Objectors should have access to the arguments and information that the court *relies on in forming its judgment.* In most class action settlements, this presents no difficulty because the district court relies on publicly available filings. The panel silently departs from *Shane Group*, its directive for transparency, and the opinions of several other circuits that require objectors and other parties asked to pay attorneys' fees have access to the actual bases for such awards.

ARGUMENT

## I.    The panel's decision contradicts *Shane Group*, which it did not even cite.

In their first question presented, the Hall Objectors faulted the district court for not even citing *Shage Group*, remarking that the "lack of a 'reasoned response' from the district court is itself independent error." *See Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244, 1252 (11th Cir. 2020). The panel opinion, recommended for publication without oral argument, compounded the district court's error. It not only failed to address that question presented or cite *Shane Group* whatsoever,[3] it does violence to *Shane Group*'s holding. *En banc* review is necessary to ensure uniformity of Circuit law.

*Shane Group* involved an objector's appeal from the approval of a class settlement, and a process in which "at the parties' behest, [the district court] sealed from public view most of the court filings and exhibits that underlay the proposed settlement." *Shane Group*, 825 F.3d at 304-05. In no uncertain terms, Judge Kethledge writing for the unanimous panel reversed the use of such a clandestine process: there is "a strong presumption in favor of openness as to court records" and that presumption "should be applied with particular strictness" in class actions because "by definition some members of the public are also parties to the case." *Id.* at 305 (internal quotations and alterations omitted). "Moreover, the greater the public interest in the litigation's subject matter, the greater the showing necessary to overcome the presumption of access." *Id.* Few cases of greater public interest exist than those arising from the Flint Water Crisis

---

[3] As a previous published decision, *Shane Group* was binding on the panel under Cir. R. 32.1(b).

and the district court's decision of how recovery should be divided between residents and attorneys.

Evidence considered by a court in decision-making (the "adjudicative" stage) constitute "judicial records" and only "compelling" reasons can justify sealing such records. *Id.* Because neither the panel nor the district court even cite *Shane Group*, they do not identify any "compelling" reason to keep records sealed that the district court expressly relied on. *Shane Group* foreclosed any possible arguments. Therefore, Hall Objectors addresses several alternative theories for why *Shane Group* would not apply; all fall.

One might argue that unlike in *Shane Group*, the Hall Objectors were able to "meaningfully participate" because they in fact filed an objection to attorneys' fees and presented the objection at a fairness hearing. The panel separately suggests something like this when it asserts that objectors "were furnished enough information to have a sufficient basis on which to object." Slip. Op. 16. But that doesn't really distinguish *Shane Group* at all; the objectors there also filed an objection and argued at a fairness hearing—this nominal participation does not enable objectors to meaningfully challenge filings withheld from their view. Non-public court records make it so that "[c]lass members cannot participate meaningfully in the process contemplated by Federal Rule of Civil Procedure 23(e)" because class members must be able to "bases of the proposed settlement and the other documents in the court record." *Shane Group*, 825 F.3d at 309. The panel's answer also fundamentally undermines the concept of an adversarial justice system, which "follow the principle of party presentation." *In re Hall*,

4 F.4th at 379 (quoting *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020)). The panel does not say how courts should determine when private litigants have had "enough information," which by necessity requires prejudging hypothetical arguments based on withheld evidence. The task of prejudging hypothetical arguments not only shortchanges objectors, bit it may be impossible. The district court cannot anticipate all arguments that could be generated from a review of 88,000 time entries. Slip Op. 8.

One might also argue that the transparency required for evaluating the fairness of a settlement under Rule 23(e) should not apply to transparency for evaluating fees under Rule 23(h), but *Shane Group* also rejects this notion. Indeed, far from exempting billing records from the general rule of openness, *Shane Group* faulted counsel for submission of deficient records: "class counsel provided no backup whatsoever—no time records, no descriptions of work done—in support of their hours … [but just] a single page of documentation for each firm, listing only the employee names, titles, rates, hours, and—by multiplying the rates and hours—the total lodestar for that firm." 825 F.3d at 310. Here, most firms filed only this sort of deficient summary, and Co-Liaison Counsel Levy Konigsberg provided even less, including only a purported total number of hours. RE 1458-3. *Shane Group* could not sanction concealing one of the principal firms' attorneys from the class given that even summary billing information would have been deficient. 825 F.3d at 310. The panel's unworkable and "enough information" standard cannot be squared with *Shane Group* or with the default setting of court transparency.

As *Shaene Group* holds, "one cannot say in any realistic sense that the error was harmless." 825 F.3d at 308. Appellees argued harmless error because the district court awarded fees as a percentage of the fund rather than though lodestar calculation, but the panel correctly rejected this argument: "detailed billing and costs records could perhaps have revealed information that would have altered the Hall Objectors' objections or even the district court's lodestar cross-check analysis itself." Slip Op. 14. One could attempt to rehabilitate the harmless error argument, by misinterpreting the panel's unsupportable finding that Hall Objectors' lack standing to challenge elements of the fee structure.[4] This approach also fails because Hall Objectors challenged both the structure of the indeterminant fee award, and the *rates* of the attorneys' fees employed.

---

[4] The panel made numerous errors in its analysis of Hall's appeal. It found that "without any separate or additional Common Benefit Assessments, the Hall Objectors would owe Co-Lead Class Counsel 25% of the value of their claims." Slip. Op. 20. But the settlement does not provide a mechanism to impose a different 25% assessment if Hall Objectors' challenge of the 17% assessment on their recovery prevailed. Contrary to the panel, Hall Objectors do not pay 25% "either way" because their *pro bono* counsel will not take the 8% fee they are entitled to, and so a reduction in special assessments would improve their actual recovery.

The panel also misreads and creates a circuit split with *Lindy Bros. Builders Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 119-20 (3d Cir. 1976). Slip Op. 21. The panel accepts the exact rationale—making it so "every claimant pays the *same* total fee percentage, regardless of whether they retained counsel"—that *Lindy* rejects as "misplaced." *Contrast* Slip Op. 21 *with* 540 F.2d at 119.

II.    **The panel's abandonment of *Shane Group* also departs from the Seventh, Eighth, Ninth and Eleventh Circuits, which interpret Rule 23(h) to require that objectors have access to the submitted bases for attorneys' fees.**

Objection rights exist for a reason: absent class members are asked to waive their rights without affirmative action, and they are compelled to pay attorneys they did not retain. For this reason, under Rule 23(h), objectors must have the ability to "provide the court with critiques of the specific work done by counsel when they were furnished with no information of what that work was, how much time it consumed, and whether and how it contributed to the benefit of the class." *In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010). As part of that process, class members or other claimants from whom payment is sought, are entitled to notice and a "full and fair opportunity" to contest "class counsel's completed fee motion." *Mercury*, 618 F.3d at 995. That entails an opportunity to "inquire into the bases for various charges and ensure that they are adequately documented and supported" and an opportunity to "provide the court with critiques of the specific work done by counsel." *Id.* at 994.

Following *Mercury*, a consensus of circuits read Rule 23(h) the same way. The Seventh Circuit held that a district court violates the rule when it "handicap[s]" objectors by forcing them to object without access to the "details of class counsel's hours and expenses." *Redman v. RadioShack Corp.*, 768 F.3d 622, 638 (7th Cir. 2014). Likewise, the Eighth Circuit interpreted Rule 23(h) to purposely enable objectors to "provide the court with critiques of specific work done by counsel" and to furnish them with "information of what that work was, how much time it consumed, and how it contributed to the benefit of the class." *Keil v. Lopez*, 862 F.3d 685, 705 (8th Cir. 2017)

(quoting *Mercury*, 618 F.3d at 994)). So too the Eleventh Circuit has held that Rule 23(h) "ensures that class members have full information when considering—and, should they choose to do so, objecting to—a fee request." *Johnson*, 975 F.3d at 1252. Simply put, Rule 23(h) requires "full information" to empower class members to capably object in their own best interests. *Johnson*, 975 F.3d at 1252.

Contrary to the panel, neither Rule 23(h) nor Hall Objectors require or requested that "the most detailed discovery practicable" be provided in all cases. Slip Op. 14. Instead, the rule requires disclosure of the accrual bases for attorneys' fee awards. Where detailed billing forms part of the bases of a fee award, objectors must have access to this information in a reasonable manner so that they can interrogate and challenge fee requests for themselves.

The panel distinguishes these cases as pertaining only to the timing of filing fee motions, and in so doing vitiates the ultimate objective of Rule 23(h). Slip Op. 15. (*Shane Group*, as already discussed, has nothing to do with timing and everything to do with substantive access.) Certainly, the rule requires sufficient "time" for class members to review a fee request, but in particular, the time necessary to review *materials used to support a fee motion*. Content, as well as timing, is an essential component of notice and an opportunity to object; notice must "convey the required information." *Mullane v. Central Hanover Bank*, 339 U.S. 306, 314 (1950). In all of these decisions, objectors could have objected to attorneys' fees awards, and in fact they did, which precipitated each of the appeals. For example, plaintiffs' counsel in *Mercury* disclosed in class notice the size of the percentage award they sought, and the objectors actually did argue (albeit with a

handicap) that the request was excessive. *Mercury*, 618 F.3d at 990-91. The problem with filing a fee motion late is not that Rule 23(h)(1) requires some specific schedule for filing fee motions, but that the motions be "directed to class members in a reasonable manner." This certainly means that motions must precede objection deadlines, but also that they disclose the actual bases for the motion. Under these authorities, district courts have a "duty to ensure that the class is afforded the opportunity to represent its own best interests." *Mercury*, 618 F.3d at 994. Contrary to the panel (Slip Op. 16), *Mercury* requires disclosure of the bases of a fee award, not merely the timing of the motions for fees.

The procedure in this case was less reasonable than those reversed in *Mercury* and *Redman*. The panel quotes *Redman* that objectors "were handicapped in objecting because the details of class counsel's hours and expenses were submitted later, with the fee motion, and so they did not have all the information they needed to justify their objections." Slip Op. 15 (quoting 768 F.3d at 637). *Redman* was concerned with the timing, but also "adequacy of detail." Slip Op. 15. The process here was worse; objectors were more handicapped because they *never* received the details of class counsel's hours, while plaintiffs and district court had access to them. The district court repeatedly credited the reliability of billing information provided *in camera*. Fee Order, RE 2105, PageID ## 72107, 72112, 72133. For example, Hall Objectors challenged the complete absence of biller information from one firm and the rates and

characterizations of contract attorneys from another firm.[5] The district court did not address these arguments, and instead found that a review of *in camera* submissions from both firms allegedly "confirms the veracity" of the declarations available to objectors. *Id.* at PageID # 72107. No class member can meaningfully challenge it because the underlying data remains concealed.

The panel's opinion creates a circuit split; something this Court is appropriately "wary" of doing. *Duncan v. United States*, 552 F.3d 442, 447 (6th Cir. 2009). But even without the phalanx of circuit authority interpreting Rule 23(h), *Mercury* and its progeny are correct, and important, as a matter of first principles. When lawyers seek fees from a common fund, their interests are directly "adverse to the interest of the class in obtaining recovery." *Rawlings v. Prudential-Bache Properties*, Inc., 9 F.3d 513, 516 (6th Cir. 1993). Every dollar lawyers take from the fund comes out of the class's pockets. And once the size of the fund is settled, the defendants have no interest in "the manner in which that amount is allocated between the class representatives, class counsel, and unnamed class members" *In re Dry Max Pampers Litig.*, 724 F.3d 713, 718 (6th Cir. 2013).

---

[5] One of the four principle appointed firms, the Napoli firm, incorrectly characterized dozens of temporary contract attorneys as "associates" and listed their billing rate as $500/hour even thought their actual market rate was closer to one tenth that amount. Declaration, RE 1548-7, PageID # 60284-85; Discovery Motion, RE 1586, PageID # 61007. These summary entries based on a false characterization of the attorneys employed constituted 74% of the hours claimed by the Napoli firm. The other co-Liaison Counsel firm Levy Konigsberg, did not submit even summary billing information, so it is impossible to know how widespread this problem is.

Even before the addition of Rule 23(h), this Court also spoke in favor of open and transparent class fee proceedings. *Jordan v. Mark IV Hair Styles, Inc.*, 806 F.2d 695, 697 (6th Cir. 1986). Fee awards "must be made with an eye to moderation" with an aim to protecting "against public fear" that the class action device "encourages excessive attorney's fees." *Id.* (quoting 3B *Moore's Federal Practice*, ¶ 23.91 (1978)). And so, "if for no other reason but to allay suspicion, the court should typically take pains to allow a complete airing of all objection to a petitioner's fee claim." *Id.* (same). This remains as true today as then: courts must "guard[] against the public perception that attorneys exploit the class action device to obtain large fees at the expense of the class." *Fessler v. Porcelana Corona De Mexico*. 23 F.4th 408, 419-20 (5th Cir. 2022).

## III. The panel's holding also breaks from *Yamada*.

Independently from Rule 23(h), which requires disclosure of the bases of fee motions to class members, the Ninth Circuit holds that "the Due Process Clause requires that opposing counsel have access to the timesheets relied on to support the fee order." *Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 545 (9th Cir. 2016) (finding an abuse of discretion where the district court relied on *in camera* inspection of detailed billing in a class action).

In the context of commercial litigation, when a prevailing plaintiff seeks to shift the responsibility for fees to a defendant corporation, that corporation has the right to review plaintiffs' counsel's bills. This practice is so routine that the Eastern District's local rules require that fee applicants file an affidavit "setting out in detail the number of hours spent on each aspect of the case" to allow "the party or parties against whom

the award is requested [to] respond with any objections." E.D. Mich. L.R. 54.1.2. *Yamada* simply recognizes this widespread practice as a due process requirement.

The panel rationalizes its departure from *Yamada* because it "involved defendants, who would ultimately pay class counsel's fees…and—again—resolved a situation where the objecting party had been 'denied a meaningful opportunity to review and to litigate the merits of the award.'" Slip. Op. 16. The panel thus suggests three distinctions from *Yamada*: (1) that *Yamada* involved a defendant; (2) that class members do not ultimately pay class counsel's fees; and (3) that the objecting party in *Yamada* was denied a meaningful opportunity to review and litigate the merits of the fee award.

Only the first of these three distinctions actually distinguish this case, and it cuts against breaking from *Yamada*. Hall admits that Flint residents are generally disadvantage compared to wealthy corporate defendants, but the panel does not support the premise that this should entitle them to fewer rights. Other courts have applied *Yamada*'s principle to class members. *Lawler v. Johnson*, 253 So. 3d 939, 948-52 (Ala. 2017); *In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, 2018 U.S. Dist. LEXIS 140137, at *182 (N.D. Cal. Aug. 17, 2018) (Koh, J.) (citing *Yamada*); *cf. also Linneman v. Vita-Mix Corp.*, 394 F. Supp. 3d 771, 784 (S.D. Ohio 2019). Neither *Yamada* itself nor the panel explains why its reasoning should not apply to any party from whom fees are sought. In fact, cases like *Shane Group* and *Jordan* suggest the exact opposite— that the process of awarding fees in class actions deserves the maximum process at the apogee of judicial scrutiny and transparency.

Class members, like the defendant in *Yamada*, are ultimately responsible for class counsel's fees. The common fund here is not an abstract pot of money, but represents the sole recovery that adult Flint residents will receive from the settling defendants to compensate them for personal injury, economic loss and property damage claims stemming from being poisoned through these defendants' negligent conduct. Attorneys' fees must be paid from the award to compensate the attorneys who secured this common benefit, but the fund itself belongs to the claimants.  It is "the value of [their] claims" that has "generated" the fund and thus the proceeds "belong solely to [them]." *Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468, 474 (5th Cir. 2011) (citing Am. Law Institute, PRINCIPLES OF THE LAW OF AGGREGATE LITIGATION § 3.07 cmt. (b)). Just as with the defendant in *Yamada*, the class here is "pay[ing] the fees." *Linneman v. Vita-Mix Corp.*, 970 F.3d 621, 632 (6th Cir. 2020).

Nor does the panel explain how class members were *not* "denied a meaningful opportunity to review and litigate the merits of the fee award." Slip Op. 16. As here, the defendant in *Yamada* had access to class counsel's fee motion, briefed an opposition to the motion, and was heard live at a hearing on the motion. *Yamada*, 825 F.3d at 542. But just as in this case, these proceedings did not provide a meaningful opportunity to litigate the motion because the district court relied on evidence concealed from the defendant—detailed billing records that the district court ordered produced *in camera*. *Id.*

The standard in *Yamada* is simple and consistent with *Shane Group* and with the operation of public courts: litigants ought to have what the court has. In other words,

due process requires a right to access evidence "*relied on* to support the fee award." *Yamada*, 825 F.3d at 545 (emphasis added). The court relied on those billing records here. *E.g.* Fee Order, RE 2105, PageID # 72107.

Objectors cannot meaningfully respond to evidence entered in secret. If Rule 23(h) is to remain a meaningful instrument for class-member participation, this Court should grant *en banc* review and reverse the panel's decision to resolve the conflict in favor of *Shane Group*.

## CONCLUSION

Hall Objectors respectfully request *en banc* review.

Dated:  March 31, 2023                     Respectfully submitted,


                                                   */s/ M. Frank Bednarz*
                                                   M. Frank Bednarz
                                                   HAMILTON LINCOLN LAW INSTITUTE
                                                   CENTER FOR CLASS ACTION FAIRNESS
                                                   1145 E. Hude Park Blvd. Unit 3A
                                                   Chicago, IL 60615
                                                   Telephone: (801) 706-2690
                                                   Email:  frank.bednarz@hlli.org

Adam E. Schulman
HAMILTON LINCOLN LAW INSTITUTE
CENTER FOR CLASS ACTION FAIRNESS
1629 K Street NW, Suite 300
Washington, DC 20006
Telephone: (610) 457-0856
Email:  adam.schulman@hlli.org

*Attorneys for Appellants Raymond Hall and
Ashley Jankowiak*

## CERTIFICATE OF COMPLIANCE WITH FED. R. APP. PROC. 32(A)(7)(C)

This brief complies with the type-volume limitation of Fed. R. App. Proc. 35(b)(2)) because this brief contains 3,890 words, excluding the parts of the brief exempted by Fed. R. App. Proc. 32(a)(7)(B)(iii), as counted by Microsoft Word 2019.

This brief complies with the typeface requirements of Fed. R. App. Proc. 32(a)(5) and the type style requirements of Fed. R. App. Proc. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in 14-point Garamond font.

Executed on March 31, 2023.

/s/ M. Frank Bednarz
M. Frank Bednarz

**PROOF OF SERVICE**

I hereby certify that on March 31, 2023, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Sixth Circuit using the CM/ECF system, which will provide notification of such filing to all counsel of record.

Executed on March 31, 2023.

/s/ M. Frank Bednarz
M. Frank Bednarz
HAMILTON LINCOLN LAW INSTITUTE
CENTER FOR CLASS ACTION FAIRNESS
1145 E. Hude Park Blvd. Unit 3A
Chicago, IL 60615
Telephone: (801) 706-2690
Email:  frank.bednarz@hlli.org

*Attorneys for Appellants Raymond Hall and Ashley Jankowiak*

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0045p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————————

IN RE: FLINT WATER CASES.

———————————————————————————————————————————

LUKE WAID,

*Plaintiff*,

INDIVIDUAL PLAINTIFFS; SETTLEMENT CLASS PLAINTIFFS,

*Plaintiffs-Appellees*,

*v.*

RICHARD DALE SNYDER, et al.,

*Defendants*,

RAYMOND HALL and ASHLEY JANKOWIAK (22-1185); HELEN
CHAPMAN, DOROTHY CHAPMAN, SHAMIYA CHAPMAN, LASHONDA
JONES, SHIRLEY GLOVER on behalf of herself and her children, J.S.
and A.S., TRISHA WALTER, TOMMIE LOWERY, JR. on behalf of
himself and his children, T.L., I.L., and M.L., LINDA WELCHE,
REKIYAH WILLIAMS on behalf of herself and her children, M.W.,
O.B., D.W., and D.W., ASHLEY SUBLET on behalf of herself and her
children, E.W. and E.W., ELIZABETH FRANKLIN on behalf of herself
and her children, E.W. and E.W., FLORLISA STEBBINS, ALBERT
HARRIS, SHEILA HARRIS, NADINE ROBERTS on behalf of herself and
her foster daughter, D.J., and EARL WELCHE (22-1197); NADINE
ROBERTS on behalf of herself and her foster daughter, D.J. (22-
1605),

*Objectors-Appellants*.

Nos. 22-1185/1197/1605

Appeal from the United States District Court for the Eastern District of Michigan at Ann Arbor.
No. 5:16-cv-10444—Judith E. Levy, District Judge.

Argued: March 14, 2023

Decided and Filed: March 17, 2023

Before: CLAY, McKEAGUE, and STRANCH, Circuit Judges.

---

### COUNSEL

**ON BRIEF:**  Adam E. Schulman, M. Frank Bednarz, HAMILTON LINCOLN LAW INSTITUTE, Washington, D.C., for Appellants in 22-1185.  Mark Cuker, CUKER LAW FIRM, Philadelphia, Pennsylvania, for Appellants in 22-1197 and 22-1605.  Hunter J. Shkolnik NAPOLI SHKOLNIK PLLC, New York, New York, Corey M. Stern, LEVY KONIGSBERG LLP, New York, New York, for Individual Plaintiffs Appellees. Emmy Levens, COHEN MILSTEIN SELLERS & TOLL, PLLC, Washington, D.C., for Settlement Class Appellees.

---

### OPINION

---

McKEAGUE, Circuit Judge.  Following the Flint Water Crisis,[1] thousands of cases were brought by minors, adults, property owners, and business owners against alleged tortfeasors for the harms they endured as a result of lead-contaminated water.  Putative class action lawsuits and individual lawsuits were consolidated in the United States District Court for the Eastern District of Michigan.  There, the district court appointed Co-Lead Class Counsel and Co-Liaison Counsel to represent the putative class and individual plaintiffs, respectively.  After years of negotiation, Co-Lead Class Counsel and Co-Liaison Counsel, together with the Settling Defendants, reached a record-breaking settlement.

In connection with the work they performed in reaching the settlement, Counsel requested attorneys' fees and reimbursement for expenses.  The court approved the underlying settlement and awarded Counsel attorneys' fees.  Three Objector-Appellant groups, the Hall Objectors, the Chapman Objectors, and the Roberts Objector, now appeal that award.  Together they allege that they were entitled to more detailed discovery of Counsel's billing and costs records, that the fee award's common benefit structure constitutes an abuse of discretion, and that a $500 charge for bone lead scans performed by Co-Liaison Counsel was unreasonable.

---

[1] The facts underlying the Flint Water Crisis have been summarized by this Court in *In re Flint Water Cases*, 960 F.3d 303 (6th Cir. 2020).

We conclude that the Objectors are not entitled to the discovery they seek, that they lack standing to appeal the common benefit structure of the district court's attorneys' fee award, and that the district court did not otherwise abuse its discretion in awarding Counsel fees and expenses.  Accordingly, we AFFIRM the district court.

## I.

### A.  Factual Background

Following the Flint Water Crisis, scores of lawsuits were filed in, removed to, or transferred to the United States District Court for the Eastern District of Michigan.  There, putative class action lawsuits and lawsuits brought by thousands of individual plaintiffs were consolidated in what have since become known as the Flint Water Cases.  Upon consolidation, the district court appointed Theodore Leopold of Cohen Milstein Sellers & Toll PLLC and Michael Pitt of Pitt McGehee Palmer & Rivers PC as Co-Lead Class Counsel for the putative class, and Corey Stern of Levy Konigsberg LLP and Hunter Shkolnik of Napoli Shkolnik PLLC as Co-Liaison Counsel for all individual cases.  Among other responsibilities, Co-Lead Class Counsel and Co-Liaison Counsel were tasked with coordinating and conducting all pretrial discovery, organizing and attending meetings between counsel, submitting and arguing all motions to the court, negotiating with Defendants, keeping the court and all Plaintiffs advised of the progress of the litigation, and "[g]enerally act[ing] fairly, efficiently, and economically in the interests of all parties and parties' counsel."  R. 234, PID 8726.

Pursuant to their duties, Co-Lead Class Counsel and Co-Liaison Counsel (collectively "Plaintiffs' Counsel") engaged Defendants in a years-long process of coordination and negotiation.  For the duration of this process, Plaintiffs' Counsel operated under the direction of court-appointed Mediators, former Judge Pamela Harwood and retired Senator Carl Levin, as well as court-appointed Special Master Deborah E. Greenspan.  Under the court's Case Management Order, Co-Lead Class Counsel and Co-Liaison Counsel were required to submit monthly time and expense records to the Special Master.  Notably, "[o]nly time spent on matters common to all plaintiffs in the Flint Water Cases ('Common Benefit Time') [would] be considered in determining fees."  R. 507, PID 15829.

After years of hard-fought and arm's-length negotiation, Co-Lead Class Counsel, Co-Liaison Counsel, and the Settling Defendants reached a proposed settlement agreement (the "Amended Settlement Agreement"). The Settling Defendants included: the State of Michigan and its individual officials ("State Defendants"); the City of Flint, Flint's City Emergency Managers, and several City employees ("Flint Defendants"); McLaren Health Care Corporation, McLaren Regional Medical Center, and McLaren Flint Hospital ("McLaren Defendants"); and Rowe Professional Services Company ("Rowe"). The settlement sought to resolve the claims of tens of thousands of minors, adults, property owners, and business owners who suffered personal and property damage as a result of the Flint Water Crisis. In the parties' Amended Settlement Agreement, State Defendants agreed to pay $600 million, Flint Defendants agreed to pay $20 million, McLaren Defendants agreed to pay $20 million,[2] and Rowe agreed to pay $1.25 million into the FWC Qualified Settlement Fund.[3] R. 1394-2, PID 54138.

Under the Amended Settlement Agreement's terms, the net funds made available in the FWC Qualified Settlement Fund were further distributed among Sub-Qualified Settlement Funds for each Settlement Category: Minor Child, Minor Adolescent, Minor Teen, Future Minor, Adults and Property Damage, Business Economic Loss, and Programmatic Relief.[4] Additionally, pursuant to the Amended Settlement Agreement's "Compensation Grid," each claimant was assigned a Settlement Category, and every claimant in each Settlement Category was entitled to the same monetary award. A claimant's Settlement Category was predicated on a variety of factors, including the claimant's age, the date(s) of the claimant's exposure to Flint water, lead levels (as demonstrated by bone or blood lead level testing), cognitive deficits, legionnaires-related harm or death, residential property ownership, business property damage, or

---

[2]After renegotiation, the parties moved to modify the McClaren Defendants' settlement amount to $5 million "in order to retain settlement funding from the McLaren Defendants in lieu of their exercise of their Walk-Away rights." R. 1980, PID 68476. The district court granted this stipulation. R. 1993.

[3]As defined in the Amended Settlement Agreement, the "FWC Qualified Settlement Fund" is "a fund established within the meaning of Treas. Reg. § 1.468B-1, . . . that will be established for purposes of Defendants paying or causing to be deposited the Settlement Amount." R. 1394-2, PID 54130.

[4]The Programmatic Relief Sub-Qualified Settlement Fund was established "to enable the local school districts and public school academies within the Genesee Intermediate School District to provide special education services for students who resided in the City of Flint during the Exposure Period and require such services." R. 1394-2, PID 54149–50.

business economic loss.  Most important for purposes of this appeal, demonstration of higher lead levels qualified claimants for larger monetary recoveries.

Under the Compensation Grid, a qualifying *blood* lead test must have been "taken *during the period of May 16, 2014 through August 31, 2016*."  R. 1319-2, Ex. 8 (emphasis added).  A qualifying *bone* lead test, on the other hand, required use of "an X-Ray fluorescence (XRF) device optimized to measure bone lead in vivo in humans and to perform measurements off in vivo bone lead in bones" and "must have been taken *between May 16, 2014, and 90 days after the date of the Preliminary Approval Order*,[5] except that the end date of 90 days after the date of the Preliminary Approval Order shall not be applied to Future Minor Claimants, who shall not be subject to that end date restriction."  *Id.* (emphasis added).  The most common objection to the Amended Settlement Agreement itself related to the inclusion of this bone lead level testing in the Compensation Grid, but the district court rejected those objections.

In an effort to develop their own clients' cases, Co-Liaison Counsel of Napoli Shkolnik PLLC established a bone lead level testing program for their clients at their offices in Flint, Michigan.  There, bone lead level testing was overseen by Dr. Aaron Specht, Ph.D., and conducted using a hand-held XRF device manufactured by Thermo Fisher.  As the district court noted in its Final Approval Order, "Co-Liaison Counsel was not obligated under the [Amended Settlement Agreement] or otherwise to offer bone lead level testing to non-Napoli clients through the Napoli Program.  Despite this, the Napoli Program did offer testing for non-clients and many obtained tests."[6]  R. 2008, PID 69675–76.

On March 8, 2021, prior to the district court's approval of the underlying settlement agreement, Plaintiffs' Counsel also filed a Motion for an Award of Attorneys' Fees and Reimbursement of Expenses ("Fee and Expense Motion").  Plaintiffs' Counsel filed their motion

---

[5]The court's Order Granting Plaintiffs' Motion for Preliminary Approval was entered January 21, 2021. R. 1399.

[6]According to the district court, Co-Liaison Counsel made 384 bone lead scan appointments available to non-clients.  Of the 384 available appointments, 306 appointments were scheduled.  Of the 306 scheduled appointments, 197 scans were ultimately completed.  Fourteen individuals declined and ninety-five did not show up for their appointment.  R. 2008, PID 69676 (citing R. 1895-2, PID 66293–94).

pursuant to Federal Rule of Civil Procedure 54, which states in part: "A claim for attorney's fees and related nontaxable expenses must be made by motion." Fed. R. Civ. P. 54(d)(2). In support of their motion, Plaintiffs' Counsel argued:

> Plaintiffs' Counsel have worked on a contingent basis for more than five years now, without compensation of any kind, to achieve this remarkable result. Moreover, Plaintiffs' Counsel have invested and will continue to invest time and resources into implementing this Settlement (while also continuing to litigate against Non-Settling Defendants). To compensate Plaintiffs' Counsel for their services and the risk they undertook in prosecuting these cases, Plaintiffs request that the Court approve their proposed framework for attorneys' fees to be awarded to Plaintiffs' Counsel (the "Fee Proposal" or "Proposal").

> The Fee Proposal is designed to provide reasonable and fair compensation to Plaintiffs' Counsel and to ensure equitable treatment for all who make claims under the Settlement. It also provides distinct fees for work performed by Co-Liaison Counsel and Class Counsel for the benefit of all Plaintiffs ("common benefit work"), for Class Counsel's work on behalf of the Settlement Subclasses, and for non-common benefit work performed by counsel individually retained by individual Claimants. A significant amount of the work performed by Plaintiffs' Counsel has benefitted all Plaintiffs in this litigation. Long-standing precedent recognizes that in common fund cases, counsel are entitled to compensation for such common benefit work.

R. 1458, PID 57158–59.

A deadline for filing objections to the Amended Settlement Agreement and to Plaintiffs' Fee and Expense Motion was set for March 29, 2021. Thereafter, the district court held a three-day fairness hearing beginning July 12, 2021. As relevant to this appeal, the district court heard argument and objections regarding Plaintiffs' Fee and Expense Motion on the third day.

During the fairness hearing, Special Master Greenspan provided an oral report on the work she performed pursuant to the Case Management Order, which set forth the standards and procedures for the reporting of time and expenses among Plaintiffs' Counsel. According to Special Master Greenspan, she began receiving time and expense submissions in August 2018. During her time as Special Master, she claims to have received more than 88,000 time entries and 7,800 expense entries. She and her team reviewed this data, identifying and correcting omissions and inconsistencies, and consolidating the information for the court's review.

Notably, she had already provided relevant time-and-expense data to the court *in camera* in anticipation of the hearing.

On November 10, 2021, the district court granted final approval of the underlying settlement. *In re Flint Water Cases*, 571 F. Supp. 3d 746 (E.D. Mich. Nov. 10, 2021). Importantly, none of the objectors involved in the instant appeal appealed from this final approval. In its Final Approval Order, the court deferred ruling on Plaintiffs' Fee and Expense Motion. Ultimately, on February 4, 2022, the district court granted Plaintiffs' Fee and Expense Motion, with a few modifications that are detailed below.

Specifically, the court awarded Plaintiffs' Counsel reimbursement for expenses in the amount of $7,147,802.36. Having "conducted its own review of the underlying data provided by the Special Master," the court concluded "that the expenses, as reconciled by the Special Master, are reasonable and well-documented." R. 2105, PID 72087. Moreover, there were no objections to the expense-request portion of Plaintiffs' Counsel's Fee and Expense Motion.

The court then granted in part and denied in part Plaintiffs' Counsel's attorneys' fee request, adopting the basic structure of the fee proposal but making a few modifications. The court awarded Plaintiffs' Counsel a Common Benefit Assessment of 6.33% of the total $626.25 million settlement amount. Apart from this 6.33% global Common Benefit Assessment, the court capped the aggregate amount that may be paid in other fees and common benefit awards at 25%—a reduction from Plaintiffs' Counsel's original request of 27%. As to these separate common benefit fees, the court set the following parameters:

- Fees will be capped at 25% for represented Plaintiffs who retained counsel before August 20, 2020,[7] and capped at 8% for counsel retained after that date.

- Counsel who assist Minors with claims after August 20, 2020 are entitled to a fee of 8%.

---

[7]The reasoning for different fees for attorneys hired before and after August 20, 2020, is that "the settlement was announced publicly in August of 2020. The reduction in the fee amount is appropriate because, once the settlement was announced, counsel did not have to undertake any litigation work or risk." R. 2105, PID 72103–04. The court extended this threshold date from July 16, 2020, the date originally requested by Plaintiffs' Counsel, to August 20, 2020, to account for the settlement's announcement to the public. *Id.*

*In re Flint Water Cases*
*Waid, et al. v. Snyder, et al.*

- Class fees will be set at 25% for the class portion of the settlement and at 10% for the Programmatic Relief component of the settlement.

*Id.* at 72088.

As to Common Benefit Assessments (CBA), the court awarded the following:

- A CBA of 17% of the value of the amount awarded to Claimants who retained counsel after August 20, 2020;

- A CBA of 17% of the value of the amount awarded to any Minor Claimant who was assisted by counsel after August 20, 2020; and

- A CBA of 25% of the value of the amount awarded to any unrepresented Minor Claimant who does not retain their own counsel.

*Id.* at 72088–89.

As to the portion of attorneys' fees related only to class recovery, the court awarded Co-Lead Class Counsel 25% of the value of the claims resolved in the Adult Exposure, Property Damage, and Business Economic Loss Subclasses, and of the aggregate claims involving a Minor who retained Class Counsel before August 20, 2020. *Id.* at 72089. Additionally, the court awarded Co-Lead Class Counsel 10% of the value of the Programmatic Relief Fund and 8% of the aggregate value of claims involving a Minor where Class Counsel assisted or was retained by the Minor after August 20, 2020. *Id.*

With respect to independently retained counsel, the court awarded the following, regardless of the amounts set forth in counsel's retainer agreements:

- 25% of the value of the claims for Claimants that entered into retainer agreements with [independently retained counsel] before August 20, 2020;

- 8% of the value of the claims for Claimants that entered into retainer agreements with [independently retained counsel] after August 20, 2020; and

- 8% of the value of the claims where [independently retained counsel] "assist[ed] and advocat[ed] for a Minor in submitting a claim, whether retained or unretained," if the assistance took place after August 20, 2020.

*Id.* at 72090.  The court explained the 8% fee caps for late-retained counsel by stating, "[t]his, when added together with the 17% [Common Benefit Assessment] value set forth above, reaches the 25% maximum value."  *Id.* at 72090 n.24.

Because Plaintiffs' Counsel's Fee and Expense Motion contained common benefit and class-settlement components, the district court was required to determine whether the awards were reasonable prior to approval.  *See Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993) (mandating that common benefit awards be "reasonable under the circumstances"); *see also* Fed. R. Civ. P. 23(h) ("In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement.").

Courts employ two methods for calculating attorneys' fees and for evaluating the reasonableness of those fees: the percentage-of-the-fund method and the lodestar method.  *Van Horn v. Nationwide Prop. and Cas. Ins. Co.*, 436 F. App'x 496, 498 (6th Cir. 2011).  "The lodestar method better accounts for the amount of work done, while the percentage of the fund method more accurately reflects the results achieved."  *Rawlings*, 9 F.3d at 516.  Courts have discretion "to select the more appropriate method for calculating attorney's fees in light of the unique characteristics of class actions in general, and the unique circumstances of the actual cases before them."  *Id.*  And given the respective benefits and drawbacks of the percentage-of-the-fund and lodestar methods, courts often select one method and use the other as a cross-check. *See Van Horn*, 436 F. App'x at 500–01.

In selecting a method, and in evaluating the overall reasonableness of the fee, courts also rely on the six "*Ramey* factors."  *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188 (6th Cir. 1974).  Those factors include:

> 1) the value of the benefit rendered to the [settling parties], 2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others, 3) whether the services were undertaken on a contingent fee basis, 4) the value of the services on an hourly basis, 5) the complexity of the litigation, and 6) the professional skill and standing of counsel involved on both sides.

*Ramey*, 508 F.2d at 1196.

Here, the district court employed the percentage-of-the-fund method with a lodestar cross-check. In selecting these methods and in evaluating the reasonableness of Plaintiffs' Fee and Expense Motion, the court provided a detailed analysis of the six *Ramey* factors. Each factor, it concluded, weighed in favor of granting Plaintiffs' Counsel's fee request.

After approving the underlying settlement and granting in part Plaintiffs' Fee and Expense Motion, the district court entered its Final Judgment pursuant to Federal Rule of Civil Procedure 54(b) on March 3, 2022. Thereafter, on June 22, 2022, the district court issued *sua sponte* an "Order Establishing Procedures for Management of Claims Process and Expense Payment for Unrepresented Claimants and for Claimants With Multiple Counsel," wherein it ordered that "payment for any single bone lead test shall not exceed $500.00." R. 2180, PID 72987.

### B. Procedural Background

Raymond Hall and Ashley Jankowiak (the "Hall Objectors") are members of the Settlement Class.[8] They filed timely objections to the fee portion of Plaintiffs' Fee and Expense Motion pursuant to Federal Rule of Civil Procedure 23(h). To advance their objections, the Hall Objectors also moved for discovery of Plaintiffs' Counsels' detailed billing and costs records. Additionally, the Hall Objectors appeared through counsel at the fairness hearing to voice their objection. On February 4, 2022, the district court denied the Hall Objectors' discovery motion in the same order that granted in part Plaintiffs' Fee Motion. The Hall Objectors timely appealed.

---

[8]Section 1.72 of the Amended Settlement Agreement defines the Settlement Class as follows:

[A]ll persons or entities who are or could be claiming personal injury, property damage, business economic loss, unjust enrichment, breach of contract, or seeking any other type of damage or relief because at any time during the Exposure period they: (1) were an Adult who owned or lived in a residence that received water from the Flint Water Treatment Plant or were legally liable for the payment of such water; (2) owned or operated a business including income earning real property and any other businesses, that received water from the Flint Water Treatment Plant or were legally liable for the payment for such water; or (3) were an Adult during the Exposure Period and who ingested or came into contact with water received from the Flint Water Treatment Plant. Excluded from the Settlement Class are: (1) Defendants; (2) the judicial officers to whom this case is assigned in the Federal Court, Genesee County Circuit Court, and Court of Claims, their staff, and the members of their immediate families; (3) all Individual Plaintiffs; and (4) all persons who timely and validly elect to opt-out of the Settlement Class.

R. 1394-2, PID 54135.

*In re Flint Water Cases*
*Waid, et al. v. Snyder, et al.*

On appeal, the Hall Objectors are joined by the Chapman Objectors and the Roberts Objector with respect to discovery issues and the award of fees and costs to Co-Liaison Counsel. The Chapman Objectors are individual plaintiffs represented by Mark. R. Cuker of the Cuker Law Firm. They are not members of the Settlement Class. Like the Hall Objectors, the Chapman Objectors appeared through counsel at the fairness hearing. And like the Hall Objectors, the Chapman Objectors moved for discovery to advance their objections. The Chapman Objectors timely appealed from the district court's denial of that discovery request and its partial grant of Plaintiffs' Fee Motion.

The Roberts Objector, also represented by Mr. Cuker, is an individual plaintiff who objects on her own behalf and on behalf of her foster daughter, D.J. D.J. is the only Objector-Appellant who received a bone lead scan from the Napoli firm. Accordingly, the Roberts Objector timely appealed from the district court's June 22, 2022 Order instating a $500 maximum on the cost of bone lead level scans.

## II.

The Hall Objectors raise two primary arguments on appeal: (1) that the district court erred in denying objectors the opportunity to review Plaintiffs' Counsel's detailed billing and costs records, and (2) that the district court violated the common fund doctrine by imposing "special assessments" on claimants who did not retain individual counsel, or who did not retain individual counsel before the designated date. For the following reasons, the Hall Objectors' arguments fail.

### A. Discovery

First, the Hall Objectors argue that the district court violated Federal Rule of Civil Procedure 23(h) by denying objectors and class members the opportunity to review detailed billing and costs records from Plaintiffs' Counsel. A review of these records, they argue, "would have shown excessive attorneys' fees." Hall Br. at 19. Appellees respond by arguing that, because the Hall Objectors do not challenge the district court's percentage-of-the-fund approach, their lodestar-related discovery arguments can be dismissed as moot. On the other hand, if this

Court does decide to reach the issue, Appellees contend that the district court properly denied the Hall Objectors' discovery request.

*Standard of Review.* "We review a district court's discovery-related rulings under the highly deferential abuse-of-discretion standard." *Ondo v. City of Cleveland*, 795 F.3d 597, 603 (6th Cir. 2015) (quoting *Loyd v. St. Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014)). "An abuse of discretion occurs if the district court relies on clearly erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment." *Louzon v. Ford Motor Co.*, 718 F.3d 556, 560 (6th Cir. 2013) (quoting *Miller v. Countrywide Bank, N.A. (In re Countrywide Fin. Corp. Mortg. Lending Pracs. Litig.)*, 708 F.3d 704, 707 (6th Cir. 2013)). Additionally, we "will not reverse a decision to limit discovery absent a clear showing that the denial of discovery resulted in actual and substantial prejudice to the complaining litigant." *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 642 (6th Cir. 2018) (internal quotation marks and citations omitted). The interpretation of the Federal Rules of Civil Procedure is reviewed de novo. *Jalapeno Prop. Mgmt., LLC v. Dukas*, 265 F.3d 506, 510 (6th Cir. 2001). Likewise, mootness is a jurisdictional question, *see Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990), that we review de novo, *see United States v. Gabrion*, 517 F.3d 839, 844 (6th Cir. 2008).

*Analysis.* Because this Court has an independent obligation to examine its own jurisdiction before proceeding to the merits, *see Nikolao v. Lyon*, 875 F.3d 310, 315 (6th Cir. 2017), we begin with Appellees' assertion that the Hall Objectors' lodestar-related discovery arguments are moot.

Article III's case-or-controversy requirement mandates that we hear only "real and substantial controvers[ies]." *See North Carolina v. Rice*, 404 U.S. 244, 246 (1971). Accordingly, we lack jurisdiction to consider a case or issue "that has 'lost its character as a present, live controversy' and thereby becomes moot." *Demis v. Sniezek*, 558 F.3d 508, 512 (6th Cir. 2009) (quoting *Hall v. Beals*, 396 U.S. 45, 48 (1969)). "The test for mootness 'is whether the relief sought would, if granted, make a difference in the legal interests of the parties.'" *McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 458 (6th Cir. 1997) (en banc)

(quoting *Crane v. Ind. High Sch. Athletic Ass'n*, 975 F.2d 1315, 1318 (7th Cir. 1992) (citation omitted)). A case is moot "only when it is impossible for a court to grant 'any effectual relief whatever' to the prevailing party." *Knox v. Serv. Emps. Intern. Union, Local 1000*, 567 U.S. 298, 307 (2012) (quoting *Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000)). So long as the parties maintain "a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Knox*, 567 U.S. at 307–08 (quoting *Ellis v. Ry. Clerks*, 466 U.S. 435, 442 (1984).

To support the reasonableness of its award, the district court used the percentage-of-the-fund method and cross-checked its fee determination with the lodestar method. Neither the Hall Objectors nor the Chapman Objectors challenge on appeal the district court's chosen methodology, nor does either objector group challenge the court's application of the six *Ramey* factors. Appellees argue that, because the Hall Objectors do not assert that the district court erred in applying the percentage-of-the-fund method, and because the lodestar cross-check was optional, "the lodestar as to this fee award is no longer a live issue." Class Appellees Br. at 21.

To support their position, Appellees cite to *Green v. Nevers*, wherein this Court considered a discovery motion moot when the underlying legal issue had already been determined by the district court and affirmed on appeal. 196 F.3d 627, 632 (6th Cir. 1999). Specifically, this Court concluded: "Because the district court could not, on remand, have taken any action inconsistent with the judgment of the appellate court, granting the appellant's discovery request could not have any legal consequences. Therefore, the discovery motion was moot, and the district court did not err in denying it." *Id.* But here, the district court denied the Hall Objectors' discovery request in the very same order in which it awarded attorneys' fees and expenses. Unlike the underlying issue in *Green*, the Hall Objectors' entitlement to a review of detailed billing and costs records had not been previously decided by the district court or affirmed by this Court on appeal. Instead, because the district court denied the Hall Objectors' lodestar-related discovery request in the same order in which it actually conducted its lodestar analysis, the Hall Objectors acquired a concrete interest in the outcome of that discovery request—both below and on appeal.

Indeed, detailed billing and costs records could perhaps have revealed information that would have altered the Hall Objectors' objections, or even the district court's lodestar cross-check analysis itself. As the Hall Objectors note in their Reply Brief, "[d]istrict courts often rely on the lodestar crosscheck as a reason to reduce fees." Hall Br. at 3–4 (citation omitted). And although the district court was not required to conduct a lodestar cross-check, *see Linneman v. Vita-Mix Corp.*, 970 F.3d 621, 628 (6th Cir. 2020), it did conduct such a cross-check. And the court itself acknowledged that its "lodestar should not be dismissed outright," and that it relied on *both* its percentage-of-the-fund analysis *and* a lodestar cross-check to ensure that its fee award was reasonable and appropriate. R. 2105, PID 72116–17. Because the Hall Objectors' discovery request could have influenced this analysis, it is not "impossible" to grant the Hall Objectors any effectual relief. *See Knox*, 567 U.S. at 307. Accordingly, a live controversy remains as to the Hall Objectors' discovery argument and we can proceed to the merits.

On the merits, the Hall Objectors first argue that Federal Rule of Civil Procedure 23(h) affords them a right to review counsel's detailed billing and costs records. However, Rule 23(h) makes no mention of class action settlement objectors' substantive right to discovery, let alone to the most detailed discovery practicable. Rule 23(h) provides:

> In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement. The following procedures apply:
>
> (1) A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at the time the court sets. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.
>
> (2) A class member, or a party from whom payment is sought, may object to the motion.
>
> (3) The court may hold a hearing and must find the facts and state its legal conclusions under Rule 52(a).
>
> (4) The court may refer issues related to the amount of the award to a special master or magistrate judge, as provided in Rule 54(d)(2)(D).

Fed. R. Civ. P. 23(h).  Although Rule 23(h) clearly affords class members the right to object to counsel's fee request, nothing in the Rule's plain language specifically entitles class claimants to detailed discovery.  *Id.*

Finding no refuge in the explicit text of the Rule, the Hall Objectors cite to a number of out-of-circuit cases, arguing that a "consensus of circuits" reads Rule 23(h) to "sensibly allow[] the paying party—class members—to attack the basis of fees and costs."  Hall Br. at 20–21. Upon review, the cases that the Hall Objectors rely on do not support finding that the Hall Objectors are entitled to the requested discovery.  In *Redman v. RadioShack Corporation*, for example, the Seventh Circuit held that a settlement violated Rule 23(h) when "[c]lass counsel did not file the attorneys' fee motion until after the deadline set by the court for objections to the settlement had expired."  768 F.3d 622, 637 (7th Cir. 2014).  The court explained that the objectors "were handicapped in objecting because the details of class counsel's hours and expenses were submitted later, with the fee motion, and so they did not have all the information they needed to justify their objections."  *Id.*  The court's concern was with the timing of class counsel's time and expense submissions, as well as those submissions' adequacy of detail and rationale.

Likewise, in *Keil v. Lopez*, the Eighth Circuit held that the district court's scheduling order violated Rule 23(h) "[b]ecause the deadline for submitting objections had passed by the time class counsel submitted their fee motion," so "class members were denied an 'adequate opportunity to review and prepare objections to class counsel's completed fee motion,'" and could make only "generalized" arguments in objection.  862 F.3d 685, 705 (8th Cir. 2017) (quoting *In re Mercury Interactive Secs. Litig.*, 618 F.3d 988, 994–95 (9th Cir. 2010)).  And in *Johnson v. NPAS Sols., LLC*, the Eleventh Circuit held that the district court violated Rule 23(h) when it "set a schedule that required class members to file any objection to the settlement— including any objection pertaining to attorneys' fees—more than two weeks before class counsel had filed their fee petition."  975 F.3d 1244, 1248 (11th Cir. 2020).  At the time the class members' objections were due, they had little information about class counsel's hours and expenses beyond the class notice.  *Id.* at 1252.  Finally, in *Mercury Interactive* itself—the very case the Hall Objectors argue forms the basis for the purported "consensus of circuits"—

the Ninth Circuit addressed only the timing of class counsel's time and expense disclosure. 618 F.3d at 993–95. Here, Plaintiffs' counsel's fee and expense motion included thirty exhibits of declarations detailing counsel's hours and expenses, providing adequate notice and information for the Hall Objectors to submit timely objections and litigate the merits of the award.

In addition to Rule 23(h), the Hall Objectors attempt to derive a right to detailed discovery from broader due process principles. This attempt, however, is equally unavailing. In *Yamada v. Nobel Biocare Holding AG*, for example, defendants appealed a district court's attorneys' fee award when the court relied on "an ex parte, in camera review of timesheets." 825 F.3d 536, 539 (9th Cir. 2016). The Ninth Circuit held that "the Due Process Clause requires that opposing counsel have access to the timesheets relied on to support the fee order." *Id.* at 545. But *Yamada* involved defendants, who would ultimately pay class counsel's fees, *see Chambers v. Whirlpool Corp.*, 980 F.3d 645, 672 (9th Cir. 2020), and—again—resolved a situation where the objecting party had been "denied a meaningful opportunity to review and to litigate the merits of the award," *Yamada*, 825 F.3d at 545 n.7.

The Hall Objectors argue that these due process protections "should extend to class members and claimants being asked to foot the bill." Hall Br. at 21–22. In their words, "Flint residents deserve no fewer rights than a kitchen appliance company." *Id.* at 22. But again, the Hall Objectors fail to offer any legal support for the idea that due process affords them the right to review the detailed billing and costs records they seek; they were furnished enough information to have a sufficient basis on which to object, both in writing and at the fairness hearing.

Setting Rule 23(h) and due process aside, the Hall Objectors also assert that the district court's *in camera* review of Plaintiffs' Counsel's time and expense records violated broader principles of openness and transparency. To support this argument, the Hall Objectors cite to *Reynolds v. Beneficial National Bank*, wherein the Seventh Circuit held that a district court abused its discretion when it relied on *in camera* review. 288 F.3d 277, 284–86 (7th Cir. 2002). But there, the court below had encouraged attorneys to submit their *fee applications*—not merely

their time entries—*in camera*, "lest the paucity of the time they had devoted to the case . . . be used as ammunition by objectors to the adequacy of the representation of the class." *Id.* at 284. Because the attorneys' fee applications were not within the appellate record, the Seventh Circuit had *no* knowledge of the total number of hours counsel devoted to the litigation. *Id.* Here, by contrast, tens of thousands of time entries were submitted to the Special Master, and hundreds of hours of work were "expended scrutinizing, reconciling, reviewing, and re-reviewing this data." R. 2105, PID 72141. *Reynolds* is neither binding nor persuasive here.

The Hall Objectors' arguments with respect to prejudice fare no better. Their assertions that billing and costs records would have shown excessive billing or revealed the inclusion of time not performed for the common benefit are entirely speculative, and we cannot say that the district court abused its discretion in concluding otherwise.

On the merits, the Hall Objectors fail to demonstrate that the district court abused its discretion in denying their motion for discovery. Indeed, the Hall Objectors fail to point to a single authoritative source that affords them a substantive right to discovery, let alone the detailed discovery they seek. Accordingly, the district court did not abuse its discretion in denying the Hall Objectors' motion for discovery as to Plaintiffs' Counsel's detailed billing and costs records.

## B. Common Benefit Assessments

Next, the Hall Objectors argue that the district court's fee and expense award violates the common fund doctrine by charging certain claimants "special assessments." Hall Br. at 35. Appellees, in turn, argue that the Hall Objectors lack standing to challenge the settlement's common benefit provisions "because a favorable ruling would not enhance their recovery under the settlement." Class Appellees Br. at 14. If this Court does reach the issue, Appellees further contend that the district court's acceptance of Common Benefit Assessments was reasonable under the circumstances.

*Standard of Review.* We review a district court's award of attorneys' fees and costs for an abuse of discretion. *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 551 (6th Cir. 2008).

"Substantial deference 'is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.'" *Hometown Folks, LLC v. S & B Wilson, Inc.*, 643 F.3d 520, 533 (6th Cir. 2011) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). The district court's award of attorneys' fees in common fund cases need only be "reasonable under the circumstances." *Rawlings*, 9 F.3d at 516.

*Analysis.* The district court's Fee Order approved a common benefit award to Plaintiffs' Counsel in the amount of $39,641,625, or 6.33% of the total settlement amount. R. 2105, PID 72142. In addition to this "global" Common Benefit Assessment, the court awarded Co-Lead Class Counsel 25% of the value of claims resolved through the Adult Exposure, Property Damage, and Business Economic Loss Subclasses. With respect to Claimants like the Hall Objectors who retained counsel after August 20, 2020, the court awarded Co-Lead Class Counsel a lesser Common Benefit Assessment of 17% of the value of their claims. Independently retained counsel retained after August 20, 2020, was awarded 8% of the value of those claims. Importantly, the aggregate amount that may be paid for fees and Common Benefit Assessments, apart from the 6.33% global Common Benefit Assessment, is 25%. *Id.* at 72087–88. In other words, both unrepresented *and* independently represented class claimants pay a total of 25% of the value of their claims, either in the form of fees or fees plus common benefit awards. This, combined with the 6.33% global Common Benefit Assessment, amounts to a maximum of 31.33% of the value of all claimants' recoveries.

The Hall Objectors do not appear to take issue with the Fee Order's 6.33% global Common Benefit Assessment. Instead, the Hall Objectors challenge what they call "special assessments"—the Common Benefit Assessments imposed on claimants who either did not retain counsel or retained counsel after August 20, 2020.

Before we can proceed to the merits, we must first determine whether we have jurisdiction to hear this claim. *See JPMorgan Chase Bank, N.A. v. Winget*, 920 F.3d 1103, 1105 (6th Cir. 2019). Appellees argue that we lack jurisdiction because the Hall Objectors have appealed from the district court's Fee Order rather than the underlying settlement's Final

Approval. Appellees cite to *Devlin v. Scardelletti* to argue that, because the Hall Objectors have not appealed from the final approval of the settlement, this Court cannot review the settlement's allocation of funds between Subclasses. 536 U.S. 1, 14 (2002). But *Devlin* addressed only whether an unnamed class member who did not formally intervene in the action "should be considered a 'party' for the purposes of appealing the approval of the settlement." *Id.* at 6. And the Supreme Court held that they should. *Id.* *Devlin* did not address the separate question presented here: whether objectors can appeal from an award of attorneys' fees rather than from the settlement's final approval.

In *Bunidich v. Becton Dickinson and Co.*, the Supreme Court held that "an unresolved issue of attorney's fees for the litigation in question does not prevent judgment on the merits from being final." 486 U.S. 196, 202 (1988). In other words, "a petition for attorney's fees in equity is 'an independent proceeding supplemental to the original proceeding and not a request for a modification of the original decree.'" *Id.* at 200 (quoting *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 170 (1939)). Accordingly, when the district court awards attorneys' fees *after* it decides the merits of the case, and when the district court's fee order "resolves all attorneys' fees in a single, final order[,] completing the post-judgment proceedings," we have independent jurisdiction over an appeal from that final fee award. *JPMorgan Chase*, 920 F.3d at 1106 (citing *Budinich*, 486 U.S. at 202). Here, the district court awarded attorneys' fees after its final approval of the underlying settlement, and it did so in a single order that terminated all post-judgment proceedings. On that basis, therefore, we have jurisdiction over the Hall Objector's timely appeal of the district court's Fee Order.

Standing, however, presents a separate jurisdictional challenge that the Hall Objectors cannot overcome. In order for this Court to exercise jurisdiction over a matter, "the party seeking relief must have standing to sue." *Kardules v. City of Columbus*, 95 F.3d 1335, 1346 (6th Cir. 1996). Constitutional standing requires the following:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of

the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks and citations omitted).

Appellees' argument is that the Hall Objectors lack standing to appeal aspects of the settlement that do not adversely affect them. Appellees assert that the Hall Objectors lack standing to appeal Common Benefit Assessments associated with unrepresented and late-represented Minors, because any CBA change associated with Minors would have no effect on the funds available to class members like the Hall Objectors, and that they lack standing to appeal the Common Benefit Assessments applicable to their claims, because they would be no better off were they to succeed in their challenge. We agree.

As outlined above, the Fee Order's Common Benefit Assessment provisions award Co-Lead Class Counsel 25% of the value of all class claims resolved through the Adult Exposure, Property Damage, and Business Economic Loss Subclasses. The Hall Objectors do not challenge this award. Accordingly, without any separate or additional Common Benefit Assessments, the Hall Objectors would owe Co-Lead Class Counsel 25% of the value of their claims. Because the Hall Objectors are class claimants who retained independent counsel after August 20, 2020, they are instead responsible for a 17% Common Benefit Assessment to Plaintiffs' Counsel, along with 8% of the value of their claims as fees to their independently retained counsel. This amounts to 25% of the value of their claims. As a matter of simple math, the Hall Objectors would pay 25% in common benefit awards and fees *either way*—with or without the "special assessments" with which they take issue.

This Court has held that "[a]n objector who does not have an injury-in-fact lacks standing to appeal an aspect of a class-action settlement that does not adversely affect his own interests." *In re Packaged Ice Antitrust Litig.*, No. 17-2137, 2018 WL 4520931, at *5 (6th Cir. 2018) (citing *Lujan*, 504 U.S. at 560). No part of the Minors' settlement allocation includes a class component, so the Hall Objectors would not be affected by any CBA change associated with Minors, because the Hall Objectors are only eligible to make claims in the Adult Exposure,

Property, and Business Economic Loss categories under the Settlement's terms. And, because the Hall Objectors would fare no better with or without the Common Benefit Assessments applicable to their claims, they fail to demonstrate that they have suffered an injury in fact. Accordingly, the Hall Objectors lack standing to appeal the Common Benefit Assessments imposed upon class claimants who retained counsel after August 20, 2020.

Furthermore, even if the Hall Objectors did have standing to appeal the Fee Order's Common Benefit Assessments, we find that the district court did not abuse its discretion in awarding those common benefit fees.

In its Fee Order, the district court concluded that the structure of Plaintiffs' Counsel's fee proposal was "consistent with the fair and equitable design of the underlying settlement." R. 2105, PID 72048. After evaluating each *Ramey* factor, the district court approved Plaintiffs' Counsel's Common Benefit Assessment provisions and fee caps for individually retained counsel, at slightly reduced percentage amounts. Yet, nowhere in the Hall Objectors' Opening or Reply Briefs do they contend that the district court abused its discretion in applying the *Ramey* factors.

Instead, the Hall Objectors point to nonbinding authority from the Third Circuit to suggest that "assessing common benefit fees unevenly against the beneficiaries of the global settlement fund" violates the common fund doctrine. Hall Br. at 37. Specifically, they cite to *Lindy Bros. Builders Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.*, wherein the Third Circuit held that the district court abused its discretion by requiring unrepresented claimants to pay 81.6% of the total attorneys' fees when their share of the fund amounted to less than 30%. 540 F.2d 102, 119–20 (3d Cir. 1976). But there, different claimants were ordered to pay widely varying percentages in attorneys' fees. Here, on the other hand, every claimant pays the *same* total fee percentage, regardless of whether they retained counsel or retained counsel after August 20, 2020.

Furthermore, the *Lindy* court found that the record below was "devoid of the type of evidence necessary" to support the fee award. *Id.* at 120. In fact, "[t]here were no affidavits, no stipulations, no testimony adduced at a hearing to substantiate [the district court's] evaluation." *Id.* Here, however, the district court received numerous affidavits from Plaintiffs' Counsel, allowed written objections to be submitted by both class members and individual plaintiffs, facilitated a fairness hearing during which those objections were heard, relied upon a Special Master who devoted hundreds of hours to validating Plaintiffs' Counsel's time and expense reports, *and* offered detailed explanation of its *Ramey* analysis in its ultimate Fee Order. Not only is *Lindy* nonbinding authority, it is entirely unpersuasive with respect to the facts of this case.

In sum, the Hall Objectors lack standing to challenge the Common Benefit Assessment provisions of the district court's Fee Order. Were they to have standing to appeal the issue, they fail to demonstrate that the district court abused its discretion in awarding Plaintiffs' Counsel Common Benefit Assessments, particularly when those assessments achieve parity among settlement beneficiaries and are reasonable under the circumstances.

### III.

The Chapman and Roberts Objectors raise three primary issues on appeal: (1) Co-Liaison Counsel devalued certain claimants' recoveries and are therefore not entitled to receive common benefit fees from those claimants; (2) the district court erred in denying objectors' discovery request with respect to Co-Liaison Counsel's bone scan program; and (3) the district court erred in ordering payment of $500 for bone scans.

### A.  Common Benefit Fees

The Chapman Objectors' first argument on appeal is that the district court erred in requiring certain claimants to pay common benefit fees to Co-Liaison Counsel when Co-Liaison Counsel allegedly did not work for the common benefit, but instead worked to decrease the recoveries of those claimants. Chapman Br. at 25–26. According to the Chapman Objectors, Co-Liaison Counsel "achieved larger recoveries for their own clients at the cost of reduced

recoveries for other claimants" by "secretly monopolizing bone lead testing in Flint, [and] then negotiating a settlement which paid large premiums to claimants with bone lead tests." *Id.* at 24–25. Appellees, in turn, argue that the Chapman Objectors and their counsel lack standing to pursue this appeal because they "are not aggrieved by the district court's rulings on attorneys' fees." Liaison Appellees Br. at 16.

*Standard of Review.* As articulated above, we review a lower court's attorneys' fee award for an abuse of discretion. *Imwalle*, 515 F.3d at 551. An attorneys' fee award needs only be "reasonable under the circumstances." *Rawlings*, 9 F.3d at 516.

*Analysis.* Because "[s]tanding is a jurisdictional requirement and we are under a continuing obligation to verify our jurisdiction over a particular case," we address the Chapman Objectors' standing to appeal this issue first. *In re Troutman Enterprises, Inc. (Harker v. Troutman)*, 286 F.3d 359, 364 (6th Cir. 2002). The Chapman Objectors are individual plaintiffs represented by Mark Cuker, with whom they contracted for a 33.33% contingency fee. *See* R. 1906, PID 67046 (At the fairness hearing, Mr. Cuker stated, "they want a common benefit fee of 6.33 percent on a 33 and a third percent fee, which is my contract as is most."). The Fee Order, however, caps attorneys' fees at 31.33% (including a combination of fees owed to independently retained counsel, common benefit fees owed to Plaintiffs' Counsel, and the global Common Benefit Assessment). Appellees argue that the Chapman Objectors are *better off* under the settlement than they would be pursuing their cases independently. We agree. Pursuant to the district court's Fee Order, the Chapman Objectors owe 31.33% of the value of their claims in attorneys' fees—*less* than the 33.33% they would have otherwise owed Mr. Cuker.

Additionally, because the Chapman Objectors are individual plaintiffs, they must voluntarily register for the settlement before they are eligible to receive settlement funds.[9] If the

---

[9] The Amended Settlement Agreement states in relevant part:

3.4. Each person or entity seeking to participate in the Settlement Program must . . . both register and provide required information regarding their claims.

3.6. Each Plaintiff that is eligible may register to become a Claimant and to receive a Monetary Award from the FWC Qualified Settlement Fund.

3.8. In order to participate in the Settlement Program, persons and entities must submit the Registration Form . . . .

Chapman Objectors preferred the terms of their contingency fee agreements with Mr. Cuker, they were free to litigate their individual claims. They needed not join the settlement at all. Because the Chapman Objectors are not aggrieved by the Fee Order's common benefit structure, they lack standing to appeal the Order's Common Benefit Assessments.

To avoid this reality, Mr. Cuker claims he will pass on any reduction in Liaison Counsel's common benefit fees to his clients: "Chapman Appellants' counsel hereby publicly and unequivocally pledges that he will pass through any reduction in Liaison Counsel's common benefit fee to the Chapman Appellants and similarly situated clients themselves, thereby increasing their net recoveries." Chapman Reply Br. at 2. But the Supreme Court has long held that parties cannot "manufacture standing" in this way. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 402 (2013). Mr. Cuker cannot avoid the jurisdictional constraints of standing by purporting to pass on any potential financial gains to his clients.

Finally, in a last-ditch effort to establish standing, Mr. Cuker argues that this Court has jurisdiction to hear this appeal pursuant to Federal Rule of Appellate Procedure 3(c). That rule provides, in relevant part:

> An appeal must not be dismissed for informality of form or title of the notice of appeal, for failure to name a party whose intent to appeal is otherwise clear from the notice, or for failure to properly designate the judgment if the notice of appeal was filed after entry of the judgment and designates an order that merged into that judgment.

Fed. R. App. P. 3(c)(7). To support this argument, Mr. Cuker relies on *Dixon v. Clem*, 492 F.3d 665, 677 (6th Cir. 2007). There, this Court determined that pursuant to Rule 3(c)(7), we "should not dismiss the appeal of a party whose intent to appeal is made 'objectively clear' by the notice

---

3.12. Any person or entity who does not submit a proper, complete, and fully executed Registration Form within sixty (60) days from the date the Federal Court signs the Preliminary Approval Orders will be ineligible to participate in the Settlement Program and will not receive a Monetary Award. Any Individual Plaintiff or Claimant that participates in the Settlement Program and all Settlement Class Members (excluding opt-outs from the Settlement Class) will be considered a Releasor for purposes of this Settlement Agreement and will be subject to Article XVI—Releases and Covenants Not to Sue. This Paragraph shall not apply to Future Minor Claimants.

R. 1394-2, PID 54140–41.

of appeal." *Id.* According to Mr. Cuker, "[i]f Liaison Counsel's claims are taken at face value, and Chapman Appellants themselves have no interest in the award of fees to Liaison Counsel, it is 'objectively clear' that [Mr. Cuker] is appealing." Chapman Reply Br. at 7. It is not, however, "objectively clear" that Mr. Cuker intended to appeal. The Chapman Objectors' Notice of Appeal lists each Objector-Appellant by name. Mr. Cuker appears nowhere on that list. Moreover, Mr. Cuker devotes an entire section (more than five pages) of his Reply Brief to arguing that *his clients* have standing to appeal. Although Mr. Cuker is undoubtedly aggrieved by the district court's Fee Order (i.e., his total fees are reduced as a result of the Order's cap on fees owed to independently retained counsel), he did not file a Notice of Appeal in his own name. As the Supreme Court held in *Torres v. Oakland Scavenger Co.*, "[t]he failure to name a party in a notice of appeal is more than excusable 'informality'; it constitutes a failure of that party to appeal." 487 U.S. 312, 314 (1988).

In sum, because the Chapman Objectors are not aggrieved by the district court's Fee Order, and because Mr. Cuker has failed to appeal in his own name, neither the Chapman Objectors nor their counsel have standing to appeal the Fee Order's common benefit fee structure with respect to Co-Liaison Counsel.

## B. Discovery

The Chapman Objectors' second argument on appeal is that the lower court erred in denying their request for discovery. In response, Appellees argue that the Chapman Objectors have forfeited this issue by failing to raise it below. Alternatively, if this Court does reach the issue, Appellees argue that the denial was not an abuse of discretion.

*Standard of Review*. As stated above with respect to the Hall Objectors' request for discovery, a district court's denial of a discovery motion is reviewed for an abuse of discretion. *Louzon*, 718 F.3d at 560. A district court's interpretation and application of the Federal Rules of Civil Procedure, however, is reviewed de novo. *Jalapeno*, 265 F.3d at 510.

*Analysis*. Because "issues not presented to the district court but raised for the first time on appeal are not properly before [this Court]," *Foster v. Barilow*, 6 F.3d 405, 407 (6th Cir.

1993) (citation omitted), we begin with Appellees' contention that the Chapman Objectors have forfeited their discovery argument.

On April 30, 2021, the Chapman Objectors filed a Motion to Review and Respond to Hourly Billing and Costs; and for Discovery of Bone Scan Information.  In that motion, the Chapman Objectors argued:

> Liaison Counsel Napoli Shkolnik and Levy Konigsberg's fee motion . . . seeks tens of millions of dollars for "common benefit work" based in part on the premise that the work they did in making bone scans a critical element of the settlement was actually for the "common benefit."  In fact, the underlying settlement which they have proffered does not provide a benefit common to all claimants but serves to [sic] Liaison Counsel's pockets at the latter's expense by paying uniquely large sums to people who underwent bone scans, almost all of whom are their own clients.  Because the sums to be paid are not fixed per types of claim, but vary according to the ratio of claimants and types of claims, every extra dollar paid to a Liaison Counsel client who qualifies for more money because of a bone scan is a dollar less available to other individual claimants. . . .

> In order to scrutinize whether the propose[d] settlement unfairly benefits the clients of Liaison Counsel at the expense of others, and whether Liaison Counsel are entitled to "common benefit fees" when their work primarily benefitted their own clients, and not others, this Court should require disclosure of information which shows whether and to what extent bone scans uniquely benefit the clients of Liaison Counsel, whether they were performed legally, what they cost, and whether they are safe and reliable.

R. 1722, PID 62551–52.

The Chapman Objectors accordingly requested that the lower court order discovery of the following:

- The number of bone scans conducted on clients of liaison counsel and the number of scans performed on other claimants.  This information should be readily available given that non-liaison counsel clients are only scanned on Sundays, and only since Feb. 21, 2021;

- When was the first scan performed on non-bellwether plaintiffs, how many scans were performed by November 16, 2020, and then how many since that date;

- Detailed time and expense billing of Liaison Counsel Plaintiffs to disclose hourly billing and costs, which are an essential part of their Fee Motion (ECF No. 1458);

- The protocols, standard operating procedures and calibrations they claim
  to use at their private bone scanning lab[;]

- Any fee sharing agreements between Liaison Counsel Napoli Shkolnik
  and Levy Konisberg[;]

- A description of what transpired during the 26 minutes off the record at
  the March 1, 2021 *ex parte* conference, which led Class Counsel to
  withdraw their "Motion for Immediate Suspension of the Use of Portable
  XRF Bone Scanning Test" ECF No. 1446[.]

R. 1722, PID 62547–48.

The district court denied the Chapman Objectors' discovery request.  On appeal, the
Chapman Objectors ask us to review that denial.  They argue:

> To determine whether Liaison Counsel's work was detrimental to most claimants
> because their bone scan monopoly increased their own clients' recoveries at other
> claimants' expense, the lower court should have required Liaison Counsel to
> disclose information showing:
>
> - Whether and to what extent their clients uniquely benefitted from bone
>   scans;
>
> - How these enhanced recoveries for Liaison Counsel's client[s] devalued
>   the claims of the remaining claimants;
>
> - How much in additional fees Liaison Counsel would receive as a result;
>   and
>
> - Whether adding a common benefit fee on top of their enhanced contingent
>   fee would result in an unreasonable total fee award.

Chapman Br. at 34–35.

Appellees contend that the Chapman Objectors have forfeited this issue.  They claim that,
although the Chapman Objectors *did* urge the district court to offer objectors an opportunity to
review detailed time and expense records, the Chapman Objectors have "[o]nly now, on
appeal . . . beefed up their presentation in support of their argument."  Liaison Appellees Br. at
23.  To support their argument, Appellees cite to *In re Anheuser-Busch Beer Labeling
Marketing.*, wherein this Court held that, in order to avoid forfeiture, "a litigant must give the
court and opposing parties notice of his position, along with some minimal level of
argumentation in support of that position."  644 F. App'x 515, 527 (6th Cir. 2016) (internal

quotation marks and citation omitted).   According to Appellees, the Chapman Objectors have
failed to meet these requirements.   We disagree.

The Chapman Objectors' discovery motion *did* "give the court and opposing parties
notice of [their] position, along with some minimal level of argumentation in support of that
position." *Id.*   By detailing their position in a twenty-four-page discovery motion, and by then
appealing the district court's denial along sufficiently similar lines, the Chapman Objectors have
satisfied the two purposes of this Court's forfeiture rules: (1) the district court was the first to
consider the issue, and (2) there is no unfair surprise to the litigants.   *See Scottsdale Ins. Co. v.
Flowers*, 513 F.3d 546, 552 (6th Cir. 2008).

Having determined that the Chapman Objectors preserved this argument for appeal, we
turn to the merits.   On the merits, we conclude that the district court's denial of the Chapman
Objectors' discovery motion was not an abuse of discretion.

The Chapman Objectors raise many of the same arguments that the Hall Objectors raise
with respect to their purported right to detailed discovery.   Indeed, the district court addressed
these motions in tandem.   However, the Chapman Objectors have an even weaker claim to
discovery than the Hall Objectors, because they are individual plaintiffs rather than class
members.   Although the district court applied Federal Rule of Civil Procedure 23's
"reasonableness" standards in its evaluation of Plaintiffs' Counsel's Fee and Expense Motion,
the Rule itself applies only to class settlements.   Therefore, any rights afforded by Rule 23 do not
apply to the Chapman Objectors, individual litigants who must voluntarily and affirmatively *opt
into* the settlement.   Furthermore, even if Rule 23 did apply to the Chapman Objectors, we have
already concluded that the Rule affords *no* substantive right to the detailed discovery they seek.

The Chapman Objectors' due process arguments also fail.   Citing a case from the District
of Kansas, the Chapman Objectors argue that settlement objectors have a "due process right to
present their challenge in a meaningful way." Chapman Br. at 37 (quoting *Hershey v.
ExxonMobil Oil Corp.*, No. 07-1300-JTM, 2012 WL 4758040, at *1 (D. Kan. Oct. 5, 2012)).
This, they argue, required discovery into the impact of Liaison Counsel's alleged "bone scan
monopoly." Chapman Br. at 37.   Not so.   As individual litigants rather than settlement class

members, the Chapman Objectors possess no inherent right to object.  Yet, the district court still afforded the Chapman Objectors an opportunity to file written objections and to appear at the fairness hearing.  And the district court responded to the Chapman Objectors' discovery request in its Fee Order.  The Chapman Objectors therefore had an opportunity to present their challenge in a meaningful way.

The Chapman Objectors cite the same cases as the Hall Objectors to argue that a "consensus of the circuits" reads Rule 23(h) to allow for detailed discovery of counsel's billing and costs.  *See* Chapman Br. at 39 (citing *Mercury Interactive*, 618 F.3d at 995; *Redman*, 768 F.3d at 636; *Keil*, 862 F.3d at 705; *Johnson*, 975 F.3d at 1252).  For the same reasons articulated above, those cases do not stand for the proposition that the Objectors are entitled to the discovery requested.  They merely require that class members have an opportunity to review counsel's fee motions before the deadline for objections.  And regardless, Rule 23 does not apply to the Chapman Objectors.

Having cited no authority to support their argument that they are entitled to discovery of Co-Liaison Counsel's billing and costs, or Co-Liaison Counsel's bone scan program, the Chapman Objectors have failed to demonstrate that the district court's denial of their discovery motion constituted an abuse of discretion.

### C.  $500 Bone Scan Charge

The Chapman Objectors' final argument on appeal is that the district court erred in ordering payment of $500 for bone scans.  Specifically, the Chapman Objectors argue that the district court violated "fundamental principles of due process and fairness" by imposing a $500 charge for bone scans without prior notice or hearing.

Appellees, in turn, argue that Nadine Roberts, whose foster daughter is the only objector to have received a bone scan from Co-Liaison Counsel, lacks standing to appeal the district court's order because she agreed to pay $500 for the scan and is therefore not aggrieved.  Alternatively, if this Court reaches the merits of the issue, Appellees argue that the $500 charge was reasonable.

*Standard of Review.*  As an aspect of the lower court's attorneys' fee and expense award, the Bone and Expense Order is reviewed for an abuse of discretion.  *Imwalle*, 515 F.3d at 551.

*Analysis.*  According to Nadine Roberts' written objections to the underlying settlement, Roberts accompanied her foster daughter, D.J., to Napoli Shkolnik's Flint offices for a bone lead scan on March 7, 2021.  In this same written objection, Roberts acknowledges that she was told "[her] lawyer would deduct $500 for the cost of the test out of [D.J.'s] recovery."  R. 1471, PID 57706.  Roberts was thus made aware of the fact that a charge for the bone scan could amount to as much as $500.

In its June 22, 2022 Bone Scan Expense Order, the district court set a $500 ceiling for the cost of a bone lead scan:

> To the extent that there are individual registrants who have retained more than one firm . . . and such individual registrants obtained bone scans from the facility operated by the Napoli firm, the Napoli firm will assure that the bone lead test result is submitted to the claims administrator regardless of which firm is undertaking to submit the claims materials.  The Napoli firm may obtain payment for such bone lead tests as outlined above: if that individual or law firm has not previously paid for the bone lead test report, then the claims administrator shall issue payment for such bone lead test as instructed by the Napoli firm.  Such payment shall be debited from the compensation payment otherwise due to the claimant.  If the dually represented individual does not qualify for compensation from the settlement, the law firms retained by the individual shall each bear an equal portion of the costs of the bone scan report which cost shall not exceed $500.00."

R. 2180, PID 72988.

Because Roberts was already aware of the $500 charge, she cannot claim to have been aggrieved by the $500 ceiling set by the district court.  Accordingly, Roberts lacks standing to appeal the district court's Bone Scan Expense Order.

Furthermore, even if Roberts did have standing to appeal the Order, she has failed to appeal the district court's Final Approval Order, wherein the court concluded that $500 was a reasonable charge:

> Five hundred dollars is not an unreasonable amount of money for individuals represented by counsel other than Co-Liaison Counsel to pay for obtaining a bone lead level test trough the Napoli Program. Napoli Shkolnik undertook the start-up work, including paying the initial costs for the program and obtaining the necessary equipment. The firm employed staff including skilled nursing staff and an office manager. It rented office space in Flint, paid for cleaning services, and, significantly, it paid the fees and costs for Dr. Specht to obtain the bone lead level testing device(s) used at the facility to train individuals in how to conduct the tests, and interpret the test results. . . . Accordingly, as stated at the July 12, 2021 hearing, from the Court's perspective, $500 per test is not prohibitive and is not a reason to reject the settlement.

R. 2008, PID 69681–82. Roberts has not, and cannot, demonstrate that the district court abused its discretion in making that determination.

## IV.

For the foregoing reasons, we AFFIRM.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

Nos. 22-1185/1197/1605

IN RE: FLINT WATER CASES.
_____

LUKE WAID,

      Plaintiff,

INDIVIDUAL PLAINTIFFS; SETTLEMENT CLASS PLAINTIFFS,

      Plaintiffs - Appellees,

      v.

RICHARD DALE SNYDER, et al.,

      Defendants,

RAYMOND HALL and ASHLEY JANKOWIAK (22-1185); HELEN
CHAPMAN, DOROTHY CHAPMAN, SHAMIYA CHAPMAN,
LASHONDA JONES, SHIRLEY GLOVER on behalf of herself and her
children, J.S. and A.S., TRISHA WALTER, TOMMIE LOWERY, JR.
on behalf of himself and his children, T.L., I.L., and M.L., LINDA
WELCHE, REKIYAH WILLIAMS on behalf of herself and her
children, M.W., O.B., D.W., and D.W., ASHLEY SUBLET on behalf of
herself and her children, E.W. and E.W., ELIZABETH FRANKLIN on
behalf of herself and her children, E.W. and E.W., FLORLISA
STEBBINS, ALBERT HARRIS, SHEILA HARRIS, NADINE
ROBERTS on behalf of herself and her foster daughter, D.J., and EARL
WELCHE (22-1197); NADINE ROBERTS on behalf of herself and her
foster daughter, D.J. (22-1605),

      Objectors - Appellants.

> **FILED**
> Mar 17, 2023
> DEBORAH S. HUNT, Clerk

Before: CLAY, McKEAGUE, and STRANCH, Circuit Judges.

**JUDGMENT**

On Appeal from the United States District Court
for the Eastern District of Michigan at Ann Arbor.

THIS CAUSE was heard on the record from the district court and was submitted on the briefs without oral argument.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

Deborah S. Hunt, Clerk